SMART, Appellant,

v.

NYSTROM et al.; Anesthesia Associates of Northwest Dayton, Inc., Appellee.

[Cite as *Smart v. Nystrom* (1997), 119 Ohio App.3d 738.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16084.

Decided May 23, 1997.

*Thomas A. Schaffer* and *Lawrence A. Wilkins,* for appellant.

*Jacobson, Maynard, Tuschman & Kalur* and *Mark L. Schumacher,* for appellee.

———————

FREDERICK N. YOUNG, Presiding Judge.

Plaintiff–appellant, Wilma W. Smart, brings this appeal from the Montgomery County Court of Common Pleas. The underlying case involved several claims arising from alleged medical malpractice. After a three-day trial, the jury returned a verdict in favor of the defendant–appellant, Anesthesia Associates of Northwest Dayton, Inc. ("Anesthesia Associates"). The sole issue at trial was proximate cause, and the sole assignment of error on appeal concerns the judge's instructions to the jury regarding that issue. Because the appellant has failed to

demonstrate that her case was prejudiced by the challenged instruction, we affirm.

## I

On March 3, 1995, appellant filed a complaint asserting a variety of claims against Dr. Perry Nystrom, Anesthesia Associates, and Gurdev S. Deol, arising from their medical treatment of her husband, Robert P. Smart. The complaint alleged that Mr. Smart entered the care of the defendants for the surgical repair of a hernia and that as a result of the defendants' "negligent mixing of drugs," he suffered severe and permanent brain damage. According to the complaint, Mr. Smart died on January 16, 1994, approximately one and a half years after his surgery. Appellant, in her own capacity and as administrator of Mr. Smart's estate, sought damages totaling $2,500,000 to compensate for Mr. Smart's pain, suffering, and emotional distress, the medical and hospital expenses, and appellant's loss of consortium.

In July 1996, the appellant voluntarily dismissed Nystrom and Deol as defendants, leaving appellee, Anesthesia Associates, as the sole remaining defendant. In return for the dismissals, Anesthesia Associates stipulated negligence in that one of their physicians, while acting within the scope of the employment relationship, breached the relevant standard of care by administering the drug Demerol to Mr. Smart while he was receiving MAO–B inhibitor therapy for Parkinson's disease. This stipulation left proximate cause as the only remaining legal issue for trial.

The three-day trial commenced on July 15, 1996. The jury found that the negligence of Anesthesia Associates did not proximately cause injury and damage to Mr. Smart, and returned a unanimous verdict in favor of the defendant. An appropriate judgment entry was filed, and the plaintiff filed a timely notice of appeal.

## II

Appellant brings one assignment of error:

"The trial court's jury instruction regarding the law of 'bad results' was wholly inappropriate in light of the evidence presented and served to mislead the jury in a matter materially affecting the appellant's substantial rights, thereby constituting reversible error."

Appellant argues that while the trial court's instruction on the issue of "bad results" was a correct statement of law, its inclusion confused and misled the jury to her prejudice. Appellant notes that the trial court's charge included three categories of instruction: first, so-called boilerplate instructions explaining the

role of the jury and the relevant legal terminology common to civil actions; second, instructions pertaining to the substantive law of the case; and third, instructions on the damages sought and appropriate deliberation procedures. Appellant does not challenge the court's first and third sets of instructions. However, while she does not dispute the accuracy or appropriateness of the court's instructions on negligence and proximate cause, appellant contends that the insertion of a "bad results" charge was reversible error.

In its response, appellee raises a procedural objection to our review of the appellant's appeal. Because appellee's argument could, if meritorious, foreclose our consideration of appellant's one assignment of error, we address it first.

## A

■ Appellee asserts that the appellant's failure to include a certified transcript containing the contested jury instruction precludes our review of the alleged error. It is almost axiomatic that the appellant bears the burden of providing a record which demonstrates the claimed error. App.R. 9(B) and 10(A); *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 19, 520 N.E.2d 564, 565–566. Moreover, "when portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 220, 400 N.E.2d 384, 385; see, also, *Baker v. Cuyahoga Cty. Court of Common Pleas* (1989), 61 Ohio App.3d 59, 62, 572 N.E.2d 155, 157.

■ An appellant's failure to complete the record is generally fatal in cases where the assignment of error concerns the sufficiency or manifest weight of the evidence, and a complete transcript is, thus, necessary for meaningful review. See, generally, *Hartt v. Munobe* (1993), 67 Ohio St.3d 3, 7, 615 N.E.2d 617, 621; see, also, *Ostrander v. Parker–Fallis Insulation Co.* (1972), 29 Ohio St.2d 72, 58 O.O.2d 117, 278 N.E.2d 363. Likewise, because the appellate court is required to review jury instructions as a whole when one or more of the instructions is challenged; the appellant's failure to include the jury instructions in the record may be fatal. See *Rinehart v. Maiorano* (1991), 76 Ohio App.3d 413, 418, 602 N.E.2d 340, 344. However, we see no cause for such a harsh result in this case. While the jury instructions themselves are not included in a certified transcript, we believe that the appellant, on the facts of this case, has supplied all the portions of the record required to demonstrate the alleged error and all facts "necessary for resolution" of the assigned error. Appellant has included in the record the complete transcript of the three-day trial of this case. The actual jury charge is the only portion of the record that is noticeably absent. However, the

appellant has included with her brief what appears to be the verbatim instructions of the trial court in this case. According to the certified trial transcript included in the record, the trial judge stated the specific instruction that he planned to give on the issue of "bad results" and precisely where among the instructions he intended to state it. Appellant's recollection of the instruction matches the trial judge's stated intentions precisely, and appellee does not even allege that the "transcript" included with appellant's brief is inaccurate in any respect. In fact, at oral argument, appellee's counsel freely admitted that appellant had faithfully reproduced the actual jury instructions.

In the absence of any suggestion that the appellant's appendix contains something other than the verbatim instructions given at trial, we decline to negate her right to appeal a properly preserved alleged error on such formalistic grounds. We now turn to the substance of appellant's assignment of error.

### B

The trial court's instruction on "bad results" was interjected into the proximate cause instructions, as follows:

"Proximate cause is an act or a failure to act which in the natural and continuous sequence directly produces the injury and without which it would not have occurred. Cause occurs when the injury is the natural and foreseeable result of the act or failure to act.

"A person is not responsible for injury to another if his negligence is a remote cause and not a proximate cause. A cause is remote when the result could not have been reasonably foresee [*sic*] and anticipated as being the natural or probable cause of an injury.

"You must decide by the greater weight of the evidence whether Defendant's negligence was the proximate cause of Plaintiff's injuries and if so, what is the extent of her damages. Plaintiff must prove the nature and extent of the injuries and that Defendant caused them.

*"The fact that the doctor's treatment did not fulfill the patient's expectations does not by itself, without more, prove that the doctor caused the patient's untoward condition.*

"On the other hand, you must find for the Defendant, if Plaintiff failed to prove to you by the greater weight of the evidence that defendant's negligence was the proximate cause of the injuries complained of."

Appellant concedes that the bad-results instruction is a correct statement of the law, but asserts that its inclusion prejudiced her case because Mr. Smart's "expectations" were irrelevant to the issue of causation and, furthermore, were

fulfilled by the successful repair of his hernia. In essence, appellant argues that the instruction was so inapplicable to the contested issue that it could only serve to confuse the jury. Nonetheless, we do not find, and appellant fails to demonstrate, specific prejudice arising from the instruction that materially affected her substantial rights.

In reviewing a trial court's use of a particular jury instruction, the law requires us to look at the totality of the jury charge in determining whether a portion of it is harmless or prejudicial. *Sech v. Rogers* (1983), 6 Ohio St.3d 462, 464, 6 OBR 515, 517, 453 N.E.2d 705, 707; *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001; *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus. In so doing, we are required to determine whether the challenged instruction probably misled the jury in a matter materially affecting the complaining party's substantial rights. *Kokitka v. Ford Motor Co.* (1995), 73 Ohio St.3d 89, 93, 652 N.E.2d 671, 674. However, if the instructions fairly and correctly state the law applicable to evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. *Reitz v. Howlett* (1995), 106 Ohio App.3d 409, 666 N.E.2d 296.

Appellant does not challenge the appropriateness of any of the other instructions, and we find them to be an adequate presentation of the controlling law on the relevant issues. Regarding the bad-results instruction, however, appellant asserts that "it is well established that a trial court should confine it's [*sic*] instructions to the issues raised by the pleadings and the evidence." Appellant cites *Hood v. New York Chicago & St. Louis RR. Co.* (1957), 166 Ohio St. 529, 3 O.O.2d 12, 144 N.E.2d 104. Much of appellant's case involved testimony that Mr. Smart was coherent and mentally alert prior to his surgery. She testified that Mr. Smart could communicate and walk easily, perform tasks such as using a screwdriver, and led a normal life as a husband, father, and grandfather. Mr. Smart's daughter, Karen Sue Howell, also testified that his mental process was not noticeably deficient prior to the surgery. A friend of Mr. Smart's, Ben Faldorf, testified that he saw no difference in Mr. Smart's appearance, behavior, speech, thought process, or memory in months leading up to the operation. Melba Day, a member of the Smarts' church, testified that she talked to Mr. Smart a few days prior to his hernia surgery and that "he was as normal as you and I." Appellant also intended to call two more witnesses, but in the interest of time the parties stipulated that those witnesses would testify to the same facts.

All of this testimony tended to establish that Mr. Smart was not in a substantially altered mental state prior to his surgery and to the administration of the Demerol. The testimony that Mr. Smart did not manifest symptoms of

dementia until after the Demerol was administered may have proven to be useful to the jury in determining the extent of the harm, but it did not by itself tend to prove causation. It may, however, have invited the jury to engage in fallacious reasoning: *post hoc ergo propter hoc.* The contested instruction was a reasonable measure to ensure that the testimony demonstrating that Mr. Smart went into appellee's care with his faculties intact and emerged tragically altered was considered only for the purpose of negating the possible defense that *little or no damage was done,* and was not considered as proof that the Demerol, as opposed to any other substance or event surrounding the surgery, caused the alleged harm.

The actual instruction, of course, was "[t]he fact that the doctor's treatment did not fulfill the patient's expectations does not by itself, without more, prove that the doctor caused the patient's untoward condition." Appellant asserts that the instruction was confusing in light of the fact that Mr. Smart's expectation was that his hernia would be repaired and that his expectation was met. However, Mr. Smart certainly had the broader expectation that "the doctor's treatment" would not leave him in a virtually vegetative condition, which is precisely what appellant alleges to have occurred. Furthermore, nitpicking over Mr. Smart's supposed expectations ignores the central point of the instruction: just because Mr. Smart suffered an awful and unanticipated harm and the doctor admitted to a negligent act does not mean *ipso facto* that the negligent act caused the harm. We believe that the jury was not misled by the challenged instruction and was capable of understanding that the charge was merely emphasizing that causation must be treated as a separate and independent element of a tort claim. We also believe that this was a point worth making to the jury.

Moreover, the instruction was not prejudicial in light of overwhelming evidence in support of the jury's verdict. The defense presented testimony of three expert witnesses. Dr. Ron Flint Beal, a neurodegenerative disease specialist, testified that he did not believe that there was a causal relationship between the administration of Demerol to Mr. Smart and Mr. Smart's subsequent condition. Likewise, Dr. Michael Kelly, a pharmacologist and toxicologist, testified that, in his opinion, there was no possibility that the Demerol contributed to Mr. Smart's condition. Finally, Perry Nystrom, the anesthesiologist who administered Mr. Smart's anesthesia, expressed the opinion that the Demerol was not involved in causing the condition. Furthermore, the plaintiff-appellant's sole expert witness engaged in the following exchange during cross-examination:

"Q. Isn't it a fact that the other causes here are just as likely as the Demerol to have been responsible for this patient's post-operative problem?

"A. They are just as possible.

"Q. Those other causes are just as likely as the Demerol to have caused the problem?

"A. Just as possible."

In light of Dr. Burkhardt's admission, this case may have been an excellent candidate for a directed verdict. See Civ.R. 50(A); *Grossman v. Hawkes Hosp. of Mt. Carmel* (1990), 52 Ohio St.3d 87, 556 N.E.2d 180. A directed verdict, of course, would dispose of the necessity for jury instructions. Where, as here, the record reveals that the challenged instruction could not have resulted in prejudice to the complaining party, it is error for a reviewing court to reverse the judgment of the trial court upon that ground. See *Haas v. Kundtz* (1916), 94 Ohio St. 238, 113 N.E. 826. Accordingly, we must overrule the appellant's assignment of error.

### III

In light of the foregoing, the judgment is affirmed.

*Judgment affirmed.*

WOLFF and GRADY, JJ., concur.