OPINION
{¶ 1} Plaintiffs-appellants Tami and Noel Moreland (for ease of reference, the plaintiffs-appellants will be referred to in the singular as Moreland), appeal from a judgment rendered in the Montgomery County Court of Common Pleas in favor of defendantsappellees Dr. Robert A. Little, M.D., and Oak Creek Ob./Gyn., Inc. (hereinafter Little and (hereinafter Little and Oak Creek), following a jury verdict. Moreland stated claims for medical malpractice and wrongful death stemming from the alleged negligence of Little and Oak Creek with respect to the diagnosis and treatment of Tami Moreland as it pertained to her pre-natal care and the subsequent death of her newborn child, Nancy Moreland.
 {¶ 2} Moreland presents two assignments of error on appeal. First, she contends that the trial court erred in its preparation and submission of the verdict forms to the jury. Second, she contends that the trial court erred by failing to include proposed jury instructions that would have clarified the issue of negligence with regard to a nurse practitioner employed by Oak Creek and Little.
 {¶ 3} We conclude that the trial court did err with regard to the jury verdict forms, because it failed to submit separate forms with regard to each defendant. We further conclude that the trial court did not err by failing to include proposed jury instructions regarding the issue of the negligence of the nurse practitioner.
 {¶ 4} Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings in accordance with this opinion.
 I {¶ 5} In 2002, Moreland filed a complaint for medical malpractice and wrongful death against Robert A. Little M.D., David J. Doucette M.D., and Oak Creek Ob./Gyn., Inc. The complaint alleged that Little and Oak Creek negligently managed Tami Moreland's pregnancy and that this negligence proximately caused the death of her infant daughter, Nancy Moreland. Before trial, Moreland voluntarily dismissed Doucette.
 {¶ 6} During trial, Moreland presented evidence to support her theory that Little and a nurse practitioner employed by Oak Creek were negligent on two separate occasions, directly contributing to the death of Nancy Moreland. The first instance of alleged negligence occurred on April 11, 2001, when Tami Moreland visited the Oak Creek office concerning her pregnancy. During this visit, Moreland spoke with Carol Nickolai, R.N., a nurse practitioner, who conducted tests indicating that Moreland had elevated blood pressure of 154/95 and urine protein of 1+. Nickolai testified that, based on the results of those tests, she informed Moreland that she had symptoms of mild preeclampsia.
 {¶ 7} Occurring in at least 5-8% of all pregnancies, preeclampsia is a condition characterized by elevated blood pressure, or hypertension, and the presence of protein in the urine. The severity of preeclampsia depends partly on the blood pressure and urine protein level of the pregnant female patient. During the prenatal visit, Nickolai testified that she outlined the risks and complications associated with preeclampsia for Moreland and ordered additional laboratory testing on April 13, 2001, in order to further evaluate her condition. Nickolai testified that she put Moreland on strict bed rest and also scheduled her for an appointment with Little one week later, on April 18, 2001.
 {¶ 8} After appearing for the scheduled laboratory tests on April 13, 2001, Moreland testified that she experienced visual disturbances, which she immediately reported to a nurse at Oak Creek over the telephone. Moreland testified that she was told not to worry, as the disturbances would cease upon delivery of her child. Little and Oak Creek have no record of this call, and offered testimony that if a patient with preeclampsia called complaining of visual disturbances, she would have been scheduled for an appointment scheduled for an appointment immediately.
 {¶ 9} On April 18, 2001, Moreland appeared for her scheduled appointment with Dr. Little. Initial testing indicated that Moreland's blood pressure was 170/110, and that she had 3+ protein in her urine, placing her within the range of those parameters indicative of severe preeclampsia. Little testified that he told Moreland that it was necessary that she be admitted to the hospital for stabilization of her condition and possible delivery of her child. At this point, Moreland left the clinic, and went home to meet her husband and gather personal belongings for the overnight hospital stay.
 {¶ 10} It is undisputed that shortly after arriving at Kettering Memorial Hospital, Moreland began passing blood and suffering from abdominal cramping. Because symptoms of severe preeclampsia were present, Dr. Doucette, the attending physician, ordered that an immediate Caesarian-section be performed to deliver the child. After the procedure was performed, Dr. Doucette discovered that a complete placental abruption had occurred. Upon delivery, Nancy Moreland was transferred from Kettering Memorial to the neonatal intensive care unit at Miami Valley Hospital, where she subsequently died. Following trial, the jury returned a verdict in favor of Little and Oak Creek, and a judgment was entered on this verdict.
 {¶ 11} From the judgment against her on her claims against Little and Oak Creek, Moreland appeals.
 II {¶ 12} Moreland's First Assignment of Error is as follows:
 {¶ 13} "The trial court erred in its preparation and submission of of verdict forms to the jury."
 {¶ 14} Moreland contends that the verdict form submitted with respect to the liability of Little and Oak Creek should not have been combined into a single verdict form. She argues that had the jury been presented with separate verdict forms for each defendant, the jury might have found either Little or Oak Creek liable. She further argues that submission of the single verdict form increased her burden by requiring her to prove liability as to both Little and Oak Creek. In essence, Moreland claims that the practical effect of the single verdict form was to confuse and mislead the jury; i.e., if the jury found only Dr. Little to be liable but not Oak Creek, or vice versa, the jury had no reasonable means by which to articulate their finding. Little and Oak Creek, conversely, argue that one could just as easily "conclude that the jury would have returned a verdict for [Moreland] and against both [Little and Oak Creek], despite finding only one of [them] to have been negligent in a manner which proximately caused injury."
 {¶ 15} We agree with Moreland. In this case, the jury was presented with a verdict form structured so that the jury might find either that both defendants were liable in negligence or that neither defendant was liable. The verdict forms submitted to the jury did not offer it the option of finding one defendant negligent, or not negligent, without finding the same result for the other. The very fact that the jury could have "easily" taken either action under the facts of this case merits a finding of error. Common sense dictates that when competing theories of liability are advanced against separate defendants, separate verdict forms should be utilized.
 {¶ 16} A reasonable jury might have credited Moreland's allegations concerning the nurse practitioner, Nikolai, concluding that Nikolai was negligent, with the result that Oak Oak Creek, Nikolai's employer, would be liable under the doctrine of respondeat superior. But the same jury might reasonably have declined to credit Moreland's allegations concerning Dr. Little, concluding that he was not liable in negligence to Moreland. Thus, one of the outcomes with which the verdict form, as submitted, was inconsistent, was a real possibility, not a theoretical, but extremely unlikely, result.
 {¶ 17} Oak Creek argues that any error was invited because Moreland objected to the use of jury interrogatories propounded by Oak Creek.[1]
Oak Creek contends that its proposed interrogatories would have prevented any confusion over the separate liability of the defendants, and that these interrogatories would have ensured a correct interpretation and application of the law and construction of the evidence during deliberations. Thus, it contends that any error in the verdict forms does not merit reversal.
 {¶ 18} We cannot agree with Little and Oak Creek that this situation involves invited error. Under the invited-error doctrine, "[a] party will not be permitted to take advantage of an error which he himself invited or induced." Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co. (1986),28 Ohio St.3d 20, paragraph one of the syllabus, citation omitted. Moreland cannot be said to have invited or induced the error involving the verdict forms, in view of her express objection to those forms.
 {¶ 19} Little and Oak Creek argue that if Moreland had consented to the use of objectionable interrogatories, it would have been possible to determine whether the verdict verdict appropriately addressed the decision of the jury. Thus, they essentially argue that Moreland's right to proper, separate verdict forms should be conditioned upon her willingness to relinquish her right to object to improper jury interrogatories.
 {¶ 20} In this case, Moreland had a legitimate basis for objecting to the interrogatories propounded by Little and Oak Creek. Indeed, the trial court found the objection meritorious and declined to submit the interrogatories to the jury. The claim that a litigant has to forego the right to object to improper interrogatories in order to preserve an objection to improper verdict forms is untenable. Furthermore, we cannot know that the interrogatories would have vitiated any problems with the verdict forms; had the interrogatory answers reflected that the jury found Oak Creek liable, but Little not liable, the verdict forms in question would still not have been adequate.
 {¶ 21} Little and Oak Creek argue that because the jury was properly instructed concerning the issues of liability pertaining to each of them, had the jury decided to find one of them liable, but the other not, we should assume that the jury would have propounded a question to the trial court as to how it could do so, in view of the verdict forms submitted. We decline to assume that a jury, in that situation, would undertake to propound a question to the trial court to resolve its dilemma.[2]
 {¶ 22} Moreland's First Assignment of Error is sustained.
 III {¶ 23} Moreland's Second Assignment of Error is as follows:
 {¶ 24} "The trial court erred in its preparation and submission of instructions to the jury."
 {¶ 25} Moreland raises several arguments regarding the correctness of the jury instructions utilized by the trial court. Moreland contends that the jury was improperly instructed on the issue of the negligence of the nurse practitioner. She also contends that certain grammatical and stylistic matters served to confuse the jury. Finally, she contends that the trial court improperly instructed the jury on the issue of respondeat superior.
 {¶ 26} We turn first to the issue of Nickolai's alleged negligence. This argument is somewhat convoluted. Moreland contends that Nickolai deviated from the standard of care by failing to inform Little that Moreland was suffering from mild preeclampsia. She further contends that this deviation constituted negligence per se because it involved a violation of a legal duty of care.[3]
 {¶ 27} Moreland contends that the trial court should have utilized the following proposed instructions regarding this issue:
 {¶ 28} "Proposed Instruction No. 9:
 {¶ 29} "A certified nurse practitioner may diagnose, manage and treat, including prevention and patient education, for common acute, common stable conditions; however, for uncommon or unstable conditions, the nurse practitioner can participate in the diagnosis only with consultation and either refer to the appropriate physician or participate in the dual participate in the dual management and treatment with a physician.
 {¶ 30} "Proposed Instruction No. 10:
 {¶ 31} "For uncommon or unstable conditions, a nurse practitioner may not participate in diagnosis, management and treatment without consultation with an appropriate physician, or dual management and treatment with a physician. A failure to abide these requirements is negligence."
 {¶ 32} Moreland drafted these instructions using the language contained in a Standard Care Arrangement executed by Nickolai as a precursor to her employment with Oak Creek. Moreland contends that the language in the Arrangement is premised upon provisions of R.C. 4723.151
and 4723.43.[4] Moreland further argues that the terms of the Arrangement and the terms of the statutes define the scope of Nickolai's duties as a nurse practitioner and also establish a legal duty of care for nurse practitioners. Moreland claims that evidence of the violation of these statutory and contractual provisions is sufficient to establish that Nickolai was negligent per se. Thus, Moreland argues that the trial court erred by failing to utilize her proposed instructions, which informed the jury that the failure to abide by the terms of the Agreement and statutes constitutes negligence.
 {¶ 33} This entire argument is built upon the assumption that the statutes and, hence, the Agreement, provide for civil liability upon the violation of any of the provisions thereof. However, our review of the statutes and the Agreement does not lead us to this lead us to this conclusion. While these statutes do set forth standards regulating the practice of nursing, they do not purport to create a basis for liability to individual patients. The only civil penalties contained therein pertain to disciplinary actions and attendant licensing suspensions and revocations. See, e.g., R.C. 4723.28 The chapter also contains a reference to criminal liability for the unauthorized practice of nursing. See, R.C. 4723.99.
 {¶ 34} When a statute does not provide for civil liability, "the question of whether violation of the statute constitutes negligence per se depends on the enactment itself." Mussivand v. David (1989),45 Ohio St.3d 314, 319, citation omitted. If the legislative enactment in question does not define a civil liability, but instead only "makes provision to secure the safety or welfare of the public," the statute does not mandate the use of a negligence per se standard. Eisenhuth v.Moneyhon (1954), 161 Ohio St. 367, paragraph three of the syllabus. R.C. Chapter 4723 does not contain language defining civil liability for an individual who violates any provisions of the statute. This Chapter provides for the safety and welfare of the public by regulating the practice of nursing.
 {¶ 35} In this case, Nickolai's liability must be assessed by determining whether she violated the standard of care applicable to nurse practitioners. While her alleged failure to comply with the terms of R.C. Chapter 4723 and the Agreement may be relevant to whether Nickolai has satisfied or breached the standard of care for certified nurse practitioners, the issue of whether a nurse has satisfied or breached her duty of care owed to a patient is determined by the applicable standard of conduct, which is proven by expert testimony. proven by expert testimony. Berdyck v. Shinde, 66 Ohio St.3d 573, 580, 1993-Ohio-183.
 {¶ 36} Therefore, we find Moreland's argument unpersuasive. We conclude that the trial court did not err in denying her request to include the proposed instructions as they do not accurately reflect the state of the law. We conclude that the trial court properly instructed the jury on the standard of care to be applied to nurse practitioners.
 {¶ 37} Moreland next contends that certain grammatical and stylistic errors within the charge add to the confusing and misleading nature of the jury instructions. In particular, she points out that the instructions refer to physicians in the plural ("defendants"), when Little was the only physician still involved the case. Moreland argues that by improperly pluralizing "defendants" within the charge, the trial court somehow compounded the error it made when it supplied the jury with a single verdict form with respect to both defendants' liability. Moreover, Moreland complains that the duties and responsibilities of the nurse practitioner were not addressed early enough in the jury charge.
 {¶ 38} We have stated recently that in reviewing a trial court's use of a particular jury instruction, the law requires us to look at the totality of the jury charge in determining whether a portion of it is harmless or prejudicial. Smart v. Nystrom (1997), 119 Ohio App.3d 738,743. If the instructions fairly and correctly state the law applicable to evidence presented at trial, reversible error will not be predicated on a mere possibility that the jury may have been misled. Id., citation omitted.
 {¶ 39} Based upon our review of the entire charge to the jury, we conclude that the jury instructions given by the trial court accurately and logically set forth the applicable law applicable law in this case. Little's duties and responsibilities are thoroughly outlined in the beginning of the charge, and the duties of the nurse practitioner are outlined shortly thereafter. Although Moreland is correct that the trial court mistakenly referred to "Defendant physicians" when Little was the only physician described in the charge, the error is harmless. Taken as a whole, the jury instructions clearly delineate the separate defendants and the nature of the allegations against them. Additionally, the fact that the physician's duties were discussed in the charge before discussion of the nurse practitioner's duties is immaterial.
 {¶ 40} Lastly, Moreland objects to the definition of respondeat superior provided by the trial court. She argues that the definition that the definition supplied by the trial court was a misstatement of law.
 {¶ 41} The trial court defined respondeat superior, instructing the jury that:
 {¶ 42} "Under the doctrine of respondeat superior, a corporate medical practice such as the Defendant Oak Creek O.B./G.Y.N. Inc., is liable for the negligent acts of its employees, including but not limited to doctors, nurses and nurse/practitioners. The negligence of such employeeis the negligence of the corporation. If you find by a greater weight of the evidence, that an employee was negligent, you may find that the corporation was negligent." (emphasis added)
 {¶ 43} Moreland argues that use of the word "may" instead of "must" in the definition constituted plain error, because it was improper to permit the jury to decide an issue that had essentially been stipulated to through the evidence.
 {¶ 44} While the instruction should have used the word "shall" or "must," we cannot say that the use of the word "may" rises to the level of plain error, given that we cannot tell cannot tell from the jury verdict whether the jury intended to find any negligence on the part of Nickolai and thus hold Oak Creek accountable for her actions. There is evidence in the record from which a reasonable jury might find that Nickolai was negligent; there is also evidence upon which a reasonable jury might rely to find that she was not negligent. In either event, this issue has been rendered moot by our disposition in Part II, above. Upon remand, should the matter be re-tried, the trial court should correct the jury instruction.
 {¶ 45} Moreland's Second Assignment of Error is overruled.
 IV {¶ 46} Moreland's First Assignment of Error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings in accordance with this opinion.
Grady, J., concurs.
[1] Moreland objected to the interrogatories on the grounds that they were not timely submitted. The trial court sustained the objection and declined to submit the jury interrogatories to the jury.
[2] We cannot help wondering if Little would have regarded this as a valid assumption if the jury had been properly instructed on the law pertaining to the liability of each defendant, but received two verdict forms, one finding both defendants not liable, and the other finding Little, only, liable, and the jury had returned a verdict against Little.
[3] The argument intertwines and confuses the issue of statutory nursing regulations with the issue of standard of care. Moreland also confusingly uses the phrases "legal duty of care" and "standard of care" interchangeably. However, we note that whether the standard of care was breached is a distinct legal concept from the issue of whether a duty exists.
[4] R.C. 4723.151 states that a certified nurse practitioner may not practice medicine otherwise than as provided by R.C. 4723.43. R.C. 4723.43
states that a certified nurse practitioner may, in collaboration with a physician, provide "preventive and primary care services and evaluate and promote patient wellness within the nurse's nursing specialty, consistent with the nurse's education and certification and in accordance with rules adopted accordance with rules adopted by the board."