[Cite as *State v. Fair*, 2011-Ohio-4454.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 24388 |
| v. | : | T.C. NO. 10CR1257 |
| DERRICK FAIR | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___2nd___ day of ___September___, 2011.

· · · · · · · · · ·

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BYRON K. SHAW, Atty. Reg. No. 0073124, 4800 Belmont Place, Huber Heights, Ohio 45424
    Attorney for Defendant-Appellant

· · · · · · · · · ·

FROELICH, J.

{¶ 1} Defendant, Derrick Fair, appeals from his conviction for felonious assault. For the following reasons, we affirm the judgment of the trial court.

I

{¶ 2} On April 18, 2010, Diana Freeman was struck by an automobile on Spinning Road in Dayton and suffered serious injuries. Witnesses on the scene reported that Fair

pushed her in front of the car as it came down the hill. Fair was tried before a jury and convicted of felonious assault on November 12, 2010.

{¶ 3} At trial, the State presented nine witnesses as well as exhibits largely consisting of photographs of the victim, scene, and car. Freeman testified about the events leading up to the incident, including drinking and arguing with Fair. She testified that she was not intoxicated when she was pushed into Spinning Road. She testified that she remembered being shoved by Fair, but could not remember any other specific details about the push or her impact with the car. She stated that she received a head injury when she was struck that has affected her memory.

{¶ 4} Freeman also testified, over defense counsel's objection, that a few hours earlier, Fair had grabbed her and pushed her toward traffic on Linden Avenue, but pulled her back. Freeman said that she told Fair if he did that she could be "splattered on the road." Defense counsel cross-examined Freeman on her testimony, particularly her memory. A limiting instruction was given at the conclusion of the trial regarding the Linden Avenue incident.

{¶ 5} Two witnesses testified that they observed a man, later identified as Fair, push Freeman with both hands in front of the car on Spinning Road. Justin Pickle, the driver of the car, provided detailed testimony of his observations of the couple prior to and during the incident. Pickle admitted on the stand that he was on his cell phone when he struck Freeman and that he did not tell officers on the scene that he was on the phone. Bo Domexcik testified that he was on the phone with Pickle when the incident occurred, and that Pickle had cursed, then said, "You've got to be kidding me, some guy just pushed a woman in front of my car. I've got to go." This statement was

admitted as an excited utterance.

{¶ 6} Rachael Jay, the driver of the car behind Pickle, also provided testimony of her observations, specifically that Fair had pushed Freeman. She testified that she watched Freeman fall headfirst into the car, which struck her in the head and threw her backward "like a ragdoll." Jay called 911 immediately and told the dispatcher that she saw Fair shove Freeman in front of the car. The call was played in open court.

{¶ 7} The State also presented the testimony of police officers who had collected evidence or spoken with Fair. A video was shown of an interview with Fair in a police cruiser following *Miranda* warnings, where he is alleged to have been laughing. Neither Fair nor the officer is visible in the video. On direct examination, the officer testified that he did not hear Fair laughing on the video.

{¶ 8} Fair presented witnesses in support of his theory that Freeman was intoxicated and had walked into traffic of her own accord. The bartender and bar manager testified that Freeman and Fair had been in Elsa's bar drinking that day. Mary Kay Meyers testified that she did not notice Freeman stumbling or slurring her words. In contrast, Diana Ward testified that she believed Freeman to be intoxicated by her loud behavior and that Freeman had hugged her. Ward testified that she had served two "Bad Juans" each to Freeman and Fair, but could not testify as to how much each person had actually consumed.

{¶ 9} Kathie Steinbruegge, the driver of the SUV in front of Pickle, testified that she had seen Freeman walk toward her vehicle, and that Fair had reached out to grab her. Steinbruegge testified that she swerved to miss Freeman, and that when she looked in her rearview mirror, Freeman was flying through the air. She testified that

she did not see the actual impact, or how Freeman came to be in front of the car.

{¶ 10} Stephen Ashton, a crash reconstructionist called by the defense, testified that, in his opinion, Justin Pickle was distracted and had time to stop before striking Freeman. He also testified that, in his opinion, the car had struck Freeman's right femur region and not her head. On cross-examination, Ashton acknowledged that he had used a four-page medical synopsis and photographs as the basis for the opinion, and that he had no specialized medical training. He testified that he was trained on what happens to a body when it is hit by a vehicle. He testified that there is no scientific test that he knows of to determine if a person stumbled in front of a vehicle or was pushed.

{¶ 11} Fair testified that Freeman walked into the road and that he tried to grab her; he said that they were both intoxicated. On cross-examination, the State questioned Fair about statements he made to Detective Colon in the police cruiser and to Detective Sturgeon later at the police station.[1] Fair responded to several questions about what happened and about the statements he made to Detective Sturgeon at the police station with "I don't remember," "I was drunk," and "I had been drinking." The State requested that Fair be permitted to review the interview at the police station outside the jury's presence to refresh his recollection. Defense counsel contended that the video could only be used to impeach contradictory statements by Fair and that "I

---

[1] Prior to the trial, Fair moved to suppress the statements that he made at the police station on the ground that he had requested an attorney prior to being questioned. The State agreed not to use that interview in its case-in-chief, rendering the motion moot. The State questioned Fair about those statements during cross-examination, however, after he chose to testify.

don't remember" is not a contradictory statement. The court asked counsel if he objected to showing Fair the video outside of the jury's presence and he did not object. However, defense counsel continued to object to "I don't remember" as an inconsistent statement.

{¶ 12} The court permitted Fair to view the interview outside the jury's presence to refresh his recollection. Following his viewing the tape, Fair admitted that he had made statements that Freeman was "running looking like a track star" and that he had the small Bad Juans, but stated that he did not remember making the statements to the detective. He testified that he did not remember anything clearly because he had been drinking and could not remember anything until he sobered up two days later in jail.

{¶ 13} The jury found Derrick Fair guilty of felonious assault. Fair appeals from his conviction and raises three assignment of error, although we note that there are five issues to be addressed within his brief.

II

{¶ 14} Fair's first assignment of error states:

{¶ 15} "APPELLANT'S CONVICTION AND SENTENCING [ARE] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 16} Fair argues that his conviction is against the manifest weight of the evidence. He poses five arguments to support his claim that Freeman walked into the street of her own accord. First, there was testimony from the bartender that Freeman had ordered two "Bad Juan" drinks and was acting intoxicated. Second, a witness testified that she had seen Fair grab for Freeman before she was struck. Third, the crash reconstructionist testified that Freeman was struck in the area of her right femur,

not her head. Fourth, Freeman admitted to having memory problems, and the trial court should have precluded her from testifying about the alleged "push and pull" on Linden Avenue under Evid.R. 404(B). Fifth, because the driver of the vehicle gave conflicting statements about whether he was on his cell phone at the time of impact, his statement to Domexcik was improperly admitted under a hearsay exception. Because Fair's fourth argument in part and fifth argument in its entirety are directed to the admissibility of evidence, not the manifest weight of the evidence, we will address them separately.

{¶ 17} A conviction may be overturned if it is against the manifest weight of the evidence. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. Weight of the evidence deals with whether the greater amount of credible evidence presented at trial supports one side of an issue more than the other. Id. The appellate court sits as the "thirteenth juror" and "asks whose evidence is more persuasive – the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 387, 2007-Ohio-2202. Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288. However, we may determine which of several competing inferences suggested by the evidence should be preferred. Id.

{¶ 18} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Elmore*, 111 Ohio St.3d 515, 559, 2006-Ohio-6207, quoting *Thompkins*, 78 Ohio St.3d at 387.

{¶ 19} Fair was convicted of felonious assault, in violation of R.C. 2903.11(A)(1), which provides: "No person shall knowingly *** cause serious harm to another ***." Fair contends that the jury "lost its way" when it found him guilty of knowingly causing serious harm to Freeman by pushing her in front of Justin Pickle's car.

{¶ 20} First, Fair emphasizes that there was evidence that Freeman was intoxicated. Fair points to the testimony of the bartender, Diane Ward, that she served two large Bad Juans to Freeman, and that Freeman was "loud and obnoxious" and gave her a hug. Ward testified that this behavior was "erratic" and "not typical." Ward could not, however, testify to how much Freeman or Fair actually drank, only what they had ordered.

{¶ 21} Contrastingly, the bar manager, Mary Kay Meyers, testified on cross-examination that she had observed Freeman and that Freeman did not appear intoxicated, specifically, that she was not slurring her words, stumbling, or staggering. Fair's sister, Stephanie Brooks, testified on cross-examination that Freeman was "boisterous" and loud, and Brooks agreed that Freeman did "lots of hugging." Fair himself testified that Freeman is energetic, active, and a loud talker. Thus, the evidence presented at trial indicates that Freeman was generally a loud person, and there was evidence – such as the lack of slurred speech or stumbling prior to being struck – from which the jury could have concluded that Freeman was not intoxicated.

Regardless, even if Freeman were intoxicated, the jury could have concluded that Fair pushed her.

{¶ 22} Second, Fair argues that because a witness testified that she saw him grab for Freeman, his conviction was against the manifest weight of the evidence. While it is true that Kathie Steinbruegge testified that she swerved to avoid Freeman and that she saw Fair reach for her, Steinbruegge also testified that she did not see how Freeman ultimately came to be in front of the car. The State offered two witnesses who testified to directly observing Fair push Freeman in front of the car. The jury could have reasonably credited the State's witnesses' testimony.

{¶ 23} Third, Fair argues that the crash reconstructionist's testimony supported his theory that Freeman walked into the street. The crash reconstructionist provided expert testimony that, in his opinion, the point of impact was at Freeman's femur. Two eyewitnesses testified that they saw the car hit Freeman's head. Regardless of the initial point of impact, it is uncontested that Freeman was struck by the automobile and suffered serious physical harm. The reconstructionist admitted that he could not determine whether a person was pushed or walked in front of a moving vehicle. The jury could have reasonably concluded, even with the expert's testimony, that Fair had pushed Freeman.

{¶ 24} Fair next argues that because Freeman admitted to having memory problems as a result of being hit by the car, her testimony weighed against conviction. Freeman explained that she was only testifying to what she remembered, not to what anyone told her; specifically, she said, "I'm just telling you why I can't remember. Not what I've been told and what, you know, I know the things I can remember. But what I

can't remember I'm not going to satisfy you and tell you what you want to hear when it's not that way." Other witnesses, including the defendant, testified. Defense counsel had the opportunity to cross-examine them as well as Freeman on her memories, leaving the final determination of credibility to the jury. Based on the evidence presented, a reasonable jury could have found Freeman's testimony to be credible, despite her admitted memory problems.

{¶ 25} Upon review of the entire record, we cannot say that the jury lost its way when it convicted Fair of felonious assault. Fair's conviction was not against the manifest weight of the evidence.

{¶ 26} Turning to Fair's two additional arguments related to the admissibility of evidence, Fair contends that Freeman had memory problems and should not have been permitted to testify about the previous "push and pull" on Linden Avenue. He further claims that her testimony should have been excluded under Evid.R. 404(B).

{¶ 27} Defense counsel filed a motion in limine to preclude Freeman's testimony about the Linden Avenue incident, arguing that it was intended to show character or conformity with prior bad acts. Counsel also argued that the testimony was unfairly prejudicial. The trial court ruled that the testimony was admissible for the purposes of showing motive, opportunity, intent, preparation, or knowledge of the defendant. A proper limiting instruction was given to the jury at the conclusion of the trial.

{¶ 28} Evid.R. 404(B) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

accident."

{¶ 29} Additionally, R.C. 2945.59 provides: "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto ***."

{¶ 30} Evidence of prior bad acts is carefully limited to prevent the jury from convicting a defendant based on past conduct, regardless of whether the elements of the charged offense can be proven. *State v. Wild*, Clark App. No. 2009 CA 83, 2010-Ohio-4751. Evidence of prior acts that is relevant to an element of the crime, occurs close in time, and involves the same people and similar circumstances has been held to have high probative value, making it hard for prejudice to outweigh inclusion. See *State v. Bush* (1997), 119 Ohio App.3d 146, 150.

{¶ 31} In *Bush*, the defendant was convicted of robbery. At trial, evidence was admitted through testimony that Bush had entered the store thirty minutes prior to the robbery for which he was charged, and had placed beer in his pocket. During this incident, the cashier repeatedly told Bush to put the beer back. He refused and walked out of the store. The cashier did not pursue him, and he was not charged. Approximately thirty minutes later, Bush reentered the store and ordered the same cashier to empty the cash register. He also took more beer. The cashier was permitted to testify regarding the earlier incident, because Bush's defiance and refusal to put back the items were deemed relevant to the force element of the later robbery.

Bush's actions during the earlier theft created a fear of force in the cashier when Bush re-entered the store. The court held that the two events were similar in factual details, involved the same individuals, and occurred close in time, and were thus admissible.

{¶ 32} Testimony regarding Fair's "prior bad acts" was strictly limited to the Linden Avenue incident, which occurred just a few hours prior to the Spinning Avenue incident. In fact, the State agreed not to offer testimony about another similar incident that had occurred three days prior, because it was not close in time. Fair committed a similar push, involving himself and Freeman, within the few hours prior to the incident on Spinning Avenue. Fair's earlier "push and pull" on Linden Avenue was relevant to whether he knowingly pushed Freeman in front of a car, causing her serious harm. Any memory problems Freeman had regarding the previous incident were thoroughly fleshed out in cross-examination. The trial court did not err in allowing the State to present evidence of the Linden Avenue incident as evidence of opportunity, intent, knowledge, preparation, plan, or absence of mistake by Fair.

{¶ 33} Finally, Fair argues that the statement made by Justin Pickle to Bo Domexcik (the person to whom he was talking on his cell phone at the time Freeman was struck) was hearsay and improperly admitted as an excited utterance.

{¶ 34} Evid.R. 803(2) explains this exception to the hearsay rule: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

{¶ 35} Justin Pickle admitted on the stand to being on his cell phone when his car struck Freeman. He also admitted that he did not tell police at the scene about being on the phone. Domexcik testified that he heard a sound on the other end of the phone,

and that Pickle sounded stressed and swore before yelling, "You've got to be kidding me, some guy just pushed a woman in front of my car. I've got to go." Pickle then disconnected. The statement was made in direct response to hitting Freeman with his car and immediately after impact.

{¶ 36} "The rationale for admitting hearsay statements pursuant to the excited utterance exception is that the declarant is unable, due to the startling event, to reflect on the statement sufficiently to fabricate it." *State v. Florence*, Montgomery App. No. 20439, 2005-Ohio-4508, ¶32. The fact that Pickle, at the scene, did not initially admit to being on his cell phone does not disqualify the use of any statement he was heard to say at the time. Defense counsel did not dispute at trial that Pickle was on the phone, and counsel referenced it in opening and closing arguments, as well as a basis for his expert's opinion that the driver was distracted.

{¶ 37} Fair's first assignment of error is overruled.

III

{¶ 38} Fair's second assignment of error states:

{¶ 39} "THE TRIAL COURT ERRED BY ALLOWING VIDEO STATEMENTS INTO EVIDENCE AGAINST APPELLANT WHEN SAID STATEMENTS WERE PRIOR INCONSISTENT STATEMENTS."

{¶ 40} In his second assignment of error, Fair claims that the trial court erred in allowing the State to cross-examine him with statements he made at the police station to Detective Sturgeon. Fair asserts that he did not make any statements at trial that were inconsistent with those statements. He further asserts that the video was improperly used to refresh his recollection.

{¶ 41} On direct examination, Fair testified that he did not push Freeman and that she had walked in front of the car. He also testified that he had drunk one and a half of the large Bad Juans and a beer prior to the incident. On cross-examination, the prosecution attempted to impeach Fair by asking him questions about statements he made at the police station that differed from his testimony at trial. For example, the following exchange occurred between Fair and the prosecuting attorney:

{¶ 42} "[PROSECUTOR]: 7:30 pm, do you remember telling the detective at that time at the police station that you had the small Bad Juans and Diane was drinking the big Bad Juans?

{¶ 43} "[DEFENDANT]: No, I don't remember.

{¶ 44} "[PROSECUTOR]: And do you not remember that because you were too drunk still at that time?

{¶ 45} "[DEFENDANT]: I just don't remember."

{¶ 46} On several other occasions, Fair responded to questions about what he told officers at the scene and at the police station – including his statement at the police station that Freeman was "running like a track star" when she crossed the street – by stating, "I had been drinking," "I was drunk," or "I don't remember."

{¶ 47} A sidebar conference was held where the State proposed showing the taped interview from the police station to Fair, outside the presence of the jury, in order to refresh his recollection. The defense objected to showing the video to Fair, and asserted that Fair had not made any contradictory statements. Defense counsel particularly objected to "I don't remember" as being inconsistent. After discussing the matter with the court and the prosecution, defense counsel opted not to object to the

video's being shown outside the presence of the jury. Defense counsel agreed that the statements made during the videotaped interview were in violation of *Miranda*, but were not otherwise untrustworthy.

{¶ 48} After viewing the videotape, cross-examination continued, during which Fair was asked about statements he made at the police station. Fair continued to say he could not remember what he had told the detective, but admitted to making the statements on the tape. For example, he testified:

{¶ 49} "[PROSECUTOR]: And do you remember, again, finally saying, 'She went running, both hands,' and then you're demonstrating how she was running?

{¶ 50} "[DEFENDANT]: No, I don't remember.

{¶ 51} "[PROSECUTOR]: Do you remember after refreshing your recollection?

{¶ 52} "[DEFENDANT]: I don't remember that, but I did say it, yes."

{¶ 53} The State contends that the video was properly used to refresh Fair's recollection so that he could be impeached on his contradictory statements. Fair argues that inconsistent statements were not made, and he takes issue with the use of his statements for impeachment purposes.

{¶ 54} Evid.R. 607(A) allows any party to impeach a witness's credibility, and the party not calling the witness may impeach using a prior inconsistent statement without showing surprise or affirmative damage. The questioner must have a reasonable basis for asking any question that implies the existence of an impeachable fact. Evid.R. 607(B). There is no requirement to show an impeached witness the written or recorded form of a prior statement, but it may be shown to opposing counsel on request. Evid.R. 613(A). Extrinsic evidence of a prior inconsistent statement becomes admissible if the

witness has had the opportunity to explain or deny the statement, and the subject of the statement is a fact of consequence to the action other than witness credibility. Evid.R. 613(B).

{¶ 55} A defendant who voluntarily takes the stand has an obligation to speak truthfully and accurately, and the prosecution may use the traditional truth testing devices of the adversarial process. *Harris v. New York* (1971), 401 U.S. 222, 226, 91 S.Ct. 643, 28 L.Ed.2d 1. Whether suppressed statements of a defendant may be used for cross-examination depends upon the reason for the suppression of those statements. *State v. Myers*, Darke App. No. 1643, 2006-Ohio-1604, ¶75. "[A]n accused's voluntary statement could be used to impeach even when the statement was taken in violation of the right to have counsel present." *State v. Hill* (1996), 75 Ohio St.3d 195, 207. See *Harris*, supra. However, the "use at trial of an involuntary statement is a denial of due process and reversible error." *State v. Jenkins* (1984), 15 Ohio St.3d 164, 231, citing *Mincey v. Arizona* (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290.

{¶ 56} The parties agreed to suppress the video of Fair's interview at the police station with Detective Sturgeon because Fair had asked for a lawyer prior to the interview. Defense counsel agreed that the statements made during the videotaped interview were not untrustworthy or involuntary. Accordingly, after Fair made conflicting statements on direct examination about how much alcohol he had to drink and said repeatedly that Freeman had walked in front of the car, the State was permitted to question Fair on these statements with his prior inconsistent statements to the police.

{¶ 57} Fair argues that he did not make statements during cross-examination that

were inconsistent with his statements to the police, because he answered the State's questions by claiming not to "know" or "remember." "If the witness admits making the conflicting statement, then there is no need for extrinsic evidence. If the witness denies making the statement, extrinsic evidence may be admitted, provided the opposing party has an opportunity to query the witness about the inconsistency, and provided the 'evidence does not relate to a collateral matter[.] ***' However, if the witness says he cannot remember the prior statement, 'a lack of recollection is treated the same as a denial, and use of extrinsic impeachment evidence is then permitted.'" (Citations omitted.) *State v. Harris* (Dec. 21, 1994), Montgomery App. No. 14343.

{¶ 58} Although the videotape was used to refresh Fair's recollection, the State did not use the videotape of the police interview as extrinsic evidence of Fair's inconsistent statements. The video was not shown to the jury or admitted into evidence. The State's use of the videotaped statements during cross-examination was not improper.

{¶ 59} Fair also challenges the State's use of the videotape to refresh his recollection. Before using a recording to refresh a witness's recollection, it must first be established that the witness cannot currently recall the events or information recorded. *State v. Gunn* (Aug. 7, 1998), Montgomery App. No. 16617. When a videotape exists of the statements, the correct procedure is to allow the witness to view the recording outside the presence of the jury, thereby having his recollection refreshed; the witness may then testify based upon his or her own present knowledge. Id. "The writing used to refresh the witness's recollection is not admitted into evidence unless admission is requested by the adverse party, and in any event has no substantive evidentiary

significance." Id., quoting *Dayton v. Combs* (1993), 94 Ohio App.3d 291, 298.

{¶ 60} The State attempted to impeach Fair without the use of the video of the police interview, but Fair stated repeatedly that he could not remember what he told the detectives and that he was drunk. To refresh his recollection, the State showed Fair the video outside the presence of the jury, and Fair was then given the opportunity to explain or deny statements that he made at the police station. The State used the proper procedure to refresh Fair's recollection.

{¶ 61} Fair's second assignment of error is overruled.

IV

{¶ 62} Fair's third assignment of error states:

{¶ 63} "THE TRIAL COURT ERRED BY NOT USING THE CORRECT OJI OF 417.25 IN LIEU OF 417.23 IN THE JURY INSTRUCTIONS."

{¶ 64} Contrary to Fair's assignment of error, which suggests that he requested that 2 Ohio Jury Instructions Section 417.25 be given to the jury, defense counsel requested in writing that 2 Ohio Jury Instructions Section 417.23 be given on the element of causation. And, during the charge conference, the defense objected to the inclusion of Section 417.25 on causation, arguing that it is typically found in homicide cases where the victim died of medical malpractice or some other intervening cause. The State did not object to the jury instructions. Both Sections 417.23 and 417.25 were given to the jury. Since both the requested instruction and the one objected to were given at trial, we will analyze both instructions for error.

{¶ 65} When reviewing the trial court's jury instructions, the proper standard of review is whether the trial court's decision to give or exclude a particular jury instruction

was an abuse of discretion under the facts and circumstances of the case. *State v. Hambly*, Montgomery App. No. 23618, 2010-Ohio-4040, ¶13. An abuse of discretion occurs when the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶ 66} Ohio Jury Instructions Section 417.23, as given to the jury, provides: "The state charges that the act of the defendant caused physical harm to Diana Freeman. *** Cause is an act or failure to act which in a natural and continuous sequence directly produces the physical harm, and without which it would not have occurred. The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act. The defendant is also responsible for the natural and foreseeable consequences or results that follow, in the ordinary course of events, from the act or failure to act."

{¶ 67} Section 417.25 was also given: "There may be one or more causes of an event. However, if a defendant's act or failure to act was one cause, then the existence of other causes is not a defense. The defendant is responsible for the natural consequences of the defendant's unlawful act or failure to act, even though physical harm was also caused by the intervening act or failure to act of another person."

{¶ 68} Ohio Jury Instructions Section 503.11(A), which addresses felonious assault in violation of R.C. 2903.11(A), references both Sections 417.23 and 417.25 as appropriate jury instructions for causation.

{¶ 69} We find no error in the court's instruction under Section 417.23. Regardless, under the doctrine of invited error; "[a] party will not be permitted to take

advantage of an error [that] he himself invited or induced." *Moreland v. Oak Creek OB/GYN, Inc.*, Montgomery App. No. 20468, 2005-Ohio-2014, ¶18, quoting *Hal Artz Lincoln-Mercury v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, paragraph one of the syllabus. Defense counsel requested Ohio Jury Instruction Section 417.23 and it was given; Fair cannot now claim error by the trial court in granting that request.

{¶ 70} We likewise find no error with the trial court's instructing the jury with Ohio Jury Instruction Section 417.25. At trial, the jury heard testimony that Fair pushed Freeman in front of the car. They also heard testimony that Pickle was on his cell phone at the time of impact, and that Freeman's injuries were the direct result of being struck by Pickle's car. Section 417.25, in conjunction with Section 417.23, clarified how each of these facts was relevant to causation, and how it may or may not have impacted Fair's culpability.

{¶ 71} We note that Section 417.25 includes an additional section on intervening cause of death, and the committee comment to that section states: "This instruction may be used only in a homicide case. The defendant may still be responsible for a lesser offense, such as attempted aggravated murder, attempted murder or assault." The intervening cause of death section was not given to the jury in Fair's trial; we see no basis to conclude that the jury was misled by the instruction under Section 417.25.

{¶ 72} Fair's third assignment of error is overruled.

V

{¶ 73} The trial court's judgment will be affirmed.

. . . . . . . . . .

HALL, J. and CELEBREZZE, J., concur.

(Hon. Frank D. Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

R. Lynn Nothstine
Byron K. Shaw
Hon. Steven K. Dankof