[Cite as *Estate of Price v. Kidney Care Specialist, L.L.C.*, 2024-Ohio-3122.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| THE ESTATE OF HAROLD GENE PRICE, BY AND THROUGH ITS ADMINISTRATOR CYNTHIA PRICE, ET AL. | : : : : : | C.A. No. 29951 |
| | : | Trial Court Case No. 2021 CV 00418 |
| Appellants/Cross-Appellees | : : | (Civil Appeal from Common Pleas Court) |
| v. | : : | |
| KIDNEY CARE SPECIALIST, LLC, ET AL. | : : : | |
| Appellees/Cross-Appellants | | |

. . . . . . . . . . .

O P I N I O N

Rendered on August 16, 2024

. . . . . . . . . .

CHARLES H. COOPER, JR., REX H. ELLIOTT, JONATHAN N. BOND, and JOHN C. CAMILLUS, Attorneys for Appellants/Cross-Appellees

JOHN B. WELCH Attorney for Appellee/Cross-Appellant Sharat Kalvakota, M.D.

BRIANNA M. PRISLIPSKY, SHANNON K. BOCKELMAN and MEREDITH TURNER-WOOLLEY, Attorneys for Appellees/Cross-Appellants Kettering Physician Network and Latha Venkatesh, M.D.

BRIAN D. SULLIVAN, ROBERT V. KISH and JACKIE M. JEWELL, Attorneys for

Appellees/Cross-Appellants Nephrology Associates of Dayton and Shachi Lovekar, M.D.

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Plaintiff-Appellants the Estate of Harold Gene Price and the decedent's wife Cynthia Price, as the administrator of the Estate (hereafter collectively referred to as "the Estate"), appeal from a judgment rendered against them on their claim for wrongful death and medical malpractice against defendant-appellees Shrat Kalvakota, M.D., Latha Venkatesh, M.D., and Kettering Physician Network (collectively referred to as "Venkatesh") and Shachi Lovekar, M.D. and Nephrology Associates of Dayton (collectively referred to as "Lovekar"). The defendant-appellees each filed a cross-appeal in which they claim the trial court erred by denying their motions for directed verdicts. For the reasons that follow, the judgment of the trial court is affirmed.

## I.     Factual and Procedural History

{¶ 2} Harold Price suffered from chronic kidney disease. In 2017, his nephrologist noted a possible lesion on the left kidney following an ultrasound. The doctor ordered an MRI and biopsy of that kidney. Relevant hereto, the MRI revealed a lesion on the right kidney. A recommendation was made to obtain a repeat scan in six months.

{¶ 3} Thereafter, Price was seen by Lovekar, who is a nephrologist. He also continued to see his family physician, Venkatesh. Price also consulted with Kalvakota, a urologist. He further underwent a kidney transplant evaluation at Ohio State University. The repeat scan of the right kidney was never obtained and, in February 2020, Price was

diagnosed with metastatic kidney cancer. He died as a result of the cancer in July 2020.

{¶ 4} The Estate filed this action in 2021 alleging medical malpractice due to failure to diagnosis the cancerous mass on Price's right kidney. Following a jury trial, a verdict was returned in favor of all the defendants.

{¶ 5} The Estate appeals. The defendants also cross-appeal from the denial of their motions for directed verdict on the issue of causation.

## II.    Juror Challenges For Cause

{¶ 6} The first assignment of error asserted by the Estate states:

THE TRIAL COURT ERRED IN REFUSING TO STRIKE FOR CAUSE VARIOUS POTENTIAL JURORS WHO, AFTER BEING INSTRUCTED BY THE COURT AS TO THE PROPER BURDEN OF PROOF, REPEATEDLY STATED THAT THEY WOULD NOT APPLY THE BURDEN OF PROOF REGARDLESS OF THE EVIDENCE OR THE TRIAL COURT'S INSTRUCTIONS.

{¶ 7} The Estate claims the trial court should have excused, for cause, jurors Walter-Sens, Hicks, Kerns, and Vance because those jurors demonstrated they would not apply the correct burden of proof.

{¶ 8} The relevant statutory provisions are R.C. 2313.17(B)(9) and (D). R.C. 2313.17 (B)(9) states that good cause exists to challenge a juror when it is "disclose[d] by the [juror's] answers that the [juror] cannot be a fair and impartial juror or will not follow the law as given by . . . the court." R.C. 2313.17(D) states that, in addition to the challenges for cause set forth in R.C 2313.17(B), "any juror may be challenged on

suspicion of prejudice or partiality for either party . . ."

{¶ 9} The first issue is the appropriate standard of review regarding the Estate's argument under R.C. 2313.17(B)(9). R.C. 2313.17(B)(1-8) articulate principle challenges that, if established, require the juror's removal. *Hall v. Banc One Mgt. Corp.,* 2007-Ohio-4640, ¶ 1.[1] This is so because the challenges set forth by R.C. 2313.17 (B)(1-8) are objective determinations which, if established, preclude a trial court's discretion to conclude that despite the existence of a R.C. 2313.17 (B)(1-8) disqualifier, the juror may nonetheless be an appropriate juror. *Id.* at ¶ 36.

{¶ 10} The *Hall* decision also discussed what is now R.C. 2313.17(B)(9), concluding that a challenge for cause under this subdivision allows the trial court to exercise discretion concerning whether the juror can be fair and impartial and follow the law. *Id.* at ¶ 38. As such, we conclude that the abuse of discretion standard of review applies to the trial court's R.C. 2313.17(B)(9) decision overruling the challenges to Walter-Sens, Hicks, Kerns, and Vance.

{¶ 11} Based on this conclusion, we reject the Estate's argument that, at minimum, the "will not follow the law" portion of R.C. 2313.17(B)(9) is an objective determination triggering de novo appellate review. The Estate asserts that once a juror indicates that he or she will not follow the law as instructed by the trial court, a subjective analysis of the juror's willingness to follow the law is inappropriate; at this point, from the Estates perspective, "there is no turning back and that juror is unsuitable to sit."

---

[1] *Hall v. Banc One* interpreted R.C. 2313.42. R.C. 2313.42 has been replaced by R.C. 2313.17. With an exception not relevant to this discussion, the statutory language was not changed.

{¶ 12} The Estate's argument is inconsistent with *Hall,* wherein the Ohio Supreme Court concluded, as discussed, that a trial court has discretion when evaluating a R.C. 2313.17(B)(9) challenge for cause. Moreover, the Estate's argument is not compatible with the reality that perspective jurors come to the process without legal training or experience which, given the relatively informal give-and-take voir dire process, can result in a juror making a statement that, in isolation, would allow a conclusion that the perspective juror will not follow the law as instructed by the trial court. Under the Estate's theory, this would end the discussion, and the trial court would have to excuse the juror. However, unlike the immutable R.C. 2313.17(B)(1-8) disqualifiers, a juror's initial response to a question regarding the burden of proof or another legal topic is not fixed but instead is subject to change following further questioning and explanation. As such, we conclude that the appellate standard of review when evaluating a R.C. 2313.17(B)(9) challenge – whether for an inability to be fair and impartial or to follow the law -- is the abuse of discretion standard. And, to the extent that R.C. 2313.17(B)(9) is considered, there is no dispute that the abuse of discretion standard is applicable.

{¶ 13} "For an abuse of discretion to occur, the trial court must have taken action that is unreasonable, arbitrary, or unconscionable. *Estate of Johnson v. Randall Smith, Inc.,* 2013-Ohio-1507, ¶ 22. In most cases, an abuse of discretion occurs because the trial court's decision is unreasonable, rather than arbitrary or unconscionable. *Id.* Finally, a trial court's R.C. 2313.17(B)(9) determination involves an assessment of the juror's credibility, which includes an evaluation of the juror's demeanor, body language and other non-verbal evidence of the juror's credibility. As such, an appellate court must "defer to

the trial judge who sees and hears the juror." *Garry v. Borger,* 2023-Ohio-905, ¶ 15 (1st Dist.), quoting *Hunt v. E. Cleveland,* 2019-Ohio-1115, ¶ 37 (8th Dist.).

{¶ 14} We begin with the Estate's claim that the trial court should have excused juror Kerns for cause. The Estate argues Kerns should have been excused because she indicated she would favor the defendants and would not award damages for loss of consortium. The Estate did not utilize a peremptory challenge against Kerns, and Kerns was not ultimately seated as a juror or alternate. Thus, regardless of whether the trial court erred by denying the request to excuse Kerns for cause, we find no prejudice.

{¶ 15} We next turn to Juror Hicks. The Estate notes that Hicks indicated he would tend to favor a defendant in a lawsuit, that the Estate would have to prove its case by more than a preponderance of the evidence, and that he believed there should be limits to money recoverable in lawsuits.[2] From this, the Estate asserts that Hicks should have been excused for cause, as these responses demonstrated he was biased and could not follow the law.

{¶ 16} A review of the entirety of the voir dire transcript shows that Hicks later indicated that someone close to him had nearly died as a result of medical malpractice. But the record further demonstrates that Hicks did not raise his hand when asked if he would favor a doctor being sued for medical malpractice; Hicks also did not indicate what limits he believed should be set for monetary damages. There is nothing in the record to indicate that he would have refused to award reasonable damages or that he would

---

[2] Though the Estate's assignment of error is limited to the contention that the challenged jurors would not apply the appropriate burden of proof, its brief asserts other reasons why the jurors should have been excused. We have considered and evaluated all of the Estate's arguments concerning each challenge.

not have properly compensated the Estate in this case. Finally, the burden of proof was further discussed later in voir dire, at which time Hicks stated that the issue made sense to him. And, when he was subsequently specifically asked whether he could apply the law as given by the judge, including the instruction regarding the burden of proof, he answered affirmatively. Tr. p. 105.

{¶ 17} The Estate next objects to the trial court's failure to excuse for cause Juror Walter-Sens. The Estate notes this juror was married to a doctor and indicated she would tend to favor the defendant in a personal injury lawsuit. She also stated that she could not award millions in compensation for mental anguish. Finally, she indicated she would require the Estate to prove its case by more than a preponderance of the evidence.

{¶ 18} We note that Walter-Sens stated, "part of me" thinks the preponderance standard is too low. However, she went on to state that she could see things in shades of gray and could understand when "things could have been done better." She also noted that some personal injury lawsuits are valid and necessary. Indeed, she noted that, in her job in the medical field, she had seen medical orders that were not carried out, which was an issue in this case. She candidly noted that the failure to follow up on the execution of medical orders was sometimes the fault of the medical team. Also, when asked later in voir dire whether she could keep an open mind, she raised her hand. She also indicated that she could follow the law, including the burden of proof, as instructed by the trial court.

{¶ 19} The Estate next contests the trial court's failure to excuse juror Vance for cause. The Estate contends his answers during voir dire indicated Vance was not

capable of being fair and impartial or of following the law. In support, the Estate notes that Vance indicated he would favor the defendant in a personal injury lawsuit and that he thought doctors were unfairly targeted in medical malpractice lawsuits. Vance also indicated he would not award millions of dollars as compensation for mental anguish. Counsel for the Estate then stated he intended to ask for over $30 million in damages. Vance then stated:

> Well, that's a lot of money. . . That's a lot more money than a lot of people will ever see in a lifetime. . . Now these people who will be awarded this money, and I'm not saying they don't deserve it . . . but $30 million, I mean, you know, in a practice, you know, that could decimate their company . . . and you know, and maybe this doctor did do something negligent, you know, but think about all the people in this practice. You know, that could destroy their livelihood. They could lose their job. . . I don't see any way that I could decide who is in the right and who is in the wrong. There is no way.

Tr. p. 97-98.

{¶ 20} Toward the latter part of voir dire, defense counsel for Venkatesh noted the Estate's counsel had presented a Power Point display during voir dire during which counsel had extensively discussed the issue of money damages and questioned whether any juror would limit the damages awarded. Defense counsel then stated that the judge would present the jurors with the law applicable to money damages and asked whether the jurors could follow the law as presented. Defense counsel noted Vance had

indicated he had an issue with the amount of money at issue. He thus specifically asked Vance whether he could "set those feelings aside and listen to the law that her Honor will give you and decide damages objectively and impartially?" Vance replied, "I think so, sure."

{¶ 21} The trial court heard arguments from counsel for the Estate and from counsel for each defendant regarding the Estate's challenges for cause before issuing a ruling thereon. Although each juror initially expressed a potentially troublesome opinion on the issues of favoring a party, the burden of proof, and the amount of damages to award, each later indicated he or she could be fair and impartial and would apply the law as instructed by the trial court. It is clear from the record that the trial court was observing the voir dire conducted by the attorneys and kept notes regarding the jurors' responses to the questions asked during voir dire. Given its ability to observe each juror's demeanor, the trial court was in a better position than this court to determine the credibility of the jurors regarding their willingness and ability to follow the law and otherwise be fair and impartial. Based on the record before us, we cannot say that the trial court abused its discretion as it related to Vance, Hicks, or Walters-Sens. Further, any error related to Kerns was not prejudicial.

{¶ 22} Accordingly, the first assignment of error is overruled.


### III.    Peremptory Challenges Regarding "Alternate" Jurors

{¶ 23} The Estate states the following as its second assignment of error:

THE TRIAL COURT ERRED WHEN, AFTER EIGHT JURORS

WERE SELECTED BUT BEFORE APPELLANTS HAD EXERCISED ANY OF THEIR PEREMPTORY CHALLENGES ON ALTERNATES, THE TRIAL COURT REPLACED TWO OF THE EIGHT JURORS WITH "ALTERNATES" BUT REFUSED TO PERMIT APPELLANTS TO EXERCISE PEREMPTORY CHALLENGES AGAINST THEM.

{¶ 24} The Estate asserts that the trial court erred by placing two alternates on the jury without permitting the parties to exercise peremptory challenges against them.

{¶ 25} Toward the end of the first day of voir dire, eight people had been questioned and seated as jurors, though not sworn in. Jury pool members Shelton and Green, who had taken part in voir dire that day, were identified as alternates. The parties then began a discussion regarding the number of alternates to be seated. Counsel for the Estate stated, "[i]f defendants are okay with that, we take those two [Shelton and Green] as alternates and we're done. Do two alternates, and everybody waives their peremptory on alternates and we can be done with voir dire. But if defendants don't agree to that, of course, we preserve our right to use strikes." Tr. p. 321.

{¶ 26} Counsel for one defendant indicated the desire to have three alternates. Therefore, the parties recommenced voir dire to select another alternate. The parties began by questioning approximately five additional candidates. After questioning was completed, some of those candidates were removed for cause. The court then adjourned for the day.

{¶ 27} The following day, questioning recommenced with approximately 10 additional alternate juror candidates. After the parties had completed their questioning,

the jury was removed from the courtroom. At that point, the trial court informed the parties that jurors Kerns and Smith had informed the bailiff that they were suffering from medical conditions and could not serve. The trial court then asked the parties whether they had any objection to excusing those two jurors. The parties all indicated they had no objections, and the two were excused.

{¶ 28} The trial court then stated that Green and Shelton would be moved into the jury box to replace Kerns and Smith. The court also noted that a third potential alternate was being dismissed because she was not a resident of Montgomery County. When the court asked, none of the parties expressed any objection to the replacement or the dismissal. The parties then made requests to excuse for cause certain of the potential alternates who had been questioned on day two. After those jurors were excused, counsel for the Estate asked whether Green and Shelton were eligible for peremptory challenges. The court stated they were not eligible as they had been part of the previous day's voir dire and challenges, and the Estate did not object to this conclusion. The parties then used peremptory challenges on the remaining alternate candidates. Thereafter, three alternates were seated, the jury was sworn in, and trial commenced.

{¶ 29} The Estate did not object to the court's moving Green and Shelton into the spots vacated by Kerns and Smith, and it also did not object when the trial court indicated that Green and Shelton were no longer subject to peremptory challenges. Thus, the Estate waived all but plain error on this issue. "The plain-error doctrine is not favored in civil appeals and 'may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously

affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' " *Nelson v. Colossal Constr. Co., Inc.,* 2017-Ohio-399, ¶ 28 (2d Dist.), quoting *Care Risk Retention Group v. Martin*, 2010-Ohio-6091, ¶ 80 (2d Dist.), quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

{¶ 30} The Estate did not attempt to have either Shelton or Green excused for cause.   Indeed, on the first day of voir dire, the Estate stated it would accept both Shelton and Green as alternates.   Counsel for the Estate knew, or should have known, that these alternates might have to replace a seated juror during the course of the trial.   Thus, the action of accepting them as alternates leads to the reasonable conclusion that the Estate was satisfied with both Green and Shelton.   Therefore, it is disingenuous for the Estate to now claim prejudice from its inability to utilize a peremptory challenge against them.

{¶ 31} We conclude the Estate has failed to demonstrate error, let alone plain error, on this issue.   Accordingly, the second assignment of error is overruled.

## IV.    Cross-Appeals Rendered Moot

{¶ 32} Each of the defendants assigned as error on cross-appeal the trial court's failure to sustain their separate motions for directed verdict on the issue of causation. Given our resolution of the Estate's assignments of error, the cross-appeals have been rendered moot and are therefore overruled.

## V.    Conclusion

**{¶ 33}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .


EPLEY, P.J. and HUFFMAN, J., concur.