[Cite as *State v. Brock*, 2025-Ohio-2538.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30374 |
| Appellee | : | |
| | : | Trial Court Case No. 2024 CR 00184 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| JONAS BROCK | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 18, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

[[Applied Signature]]

MICHAEL L. TUCKER, JUDGE

Lewis, J., and Hanseman, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30374

CHIMA R. EKEH, Attorney for Appellant
MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

TUCKER, J.

{¶ 1} Jonas Brock appeals from his conviction following a jury trial on charges of gross sexual imposition and illegal use of a minor in nudity-oriented material.

{¶ 2} Brock challenges the trial court's refusal to excuse two prospective jurors for cause, requiring him to exercise peremptory challenges on them. He contends the trial court erred in admitting incriminating video evidence absent a proper foundation. He claims the trial court erred in failing to use his proposed special jury instructions. Finally, he asserts that his convictions were based on legally insufficient evidence and were against the manifest weight of the evidence.

{¶ 3} We conclude that the trial court did not err in refusing to excuse the two prospective jurors for cause, admitting the challenged videos into evidence, or declining to give the requested special jury instructions. Having reviewed the record, we are also unpersuaded by Brock's legal-sufficiency and manifest-weight arguments regarding the State's evidence. Accordingly, the trial court's judgment will be affirmed.

**I. Background**

{¶ 4} The charges against Brock involved his touching his girlfriend's 10-year-old daughter's bare buttocks and recording cell-phone videos of the activity. The State's primary witness at trial was the child's mother, T.H. She testified that Brock lived with her and her

three daughters when she accessed two of his cell phones on the morning of January 15, 2024, and found three videos among deleted files. T.H. testified that the videos depicted Brock fondling her 10-year-old daughter's bare buttocks while the child appeared to be asleep in the couple's bed. After seeing the videos, T.H. confronted Brock, who insisted that they depicted the torso of a silicone sex doll. Brock then left the house, and T.H. called the police.

{¶ 5} The child underwent a forensic interview at CARE House as part of the police investigation, but she did not disclose any abuse or sexual assault. A detective also interviewed Brock. During the interview, he again claimed that the videos showed the torso of a silicone sex doll he had found while cleaning out a vacant apartment in the fall of 2023. Brock explained that he brought the doll home in a duffle bag and hid it. He claimed that he then dressed the doll in the 10-year-old child's clothing and made the videos. Brock maintained that he deleted the videos and discarded the doll on the same day that T.H. discovered the recordings.

{¶ 6} In his defense, Brock presented testimony from a private investigator who had been retained to research sex dolls. The investigator testified as to the availability of realistic-looking silicone dolls in a variety of skin tones and textures with customizable blemishes including freckles and scars.

{¶ 7} Based on the evidence presented, the jury found Brock guilty of both charges. The trial court imposed concurrent sentences totaling a minimum of two and a maximum of three years in prison. It also designated him a Tier II sex offender. Brock timely appealed, advancing five assignments of error. The trial court stayed execution of his sentence pending the outcome of the appeal.

## II. Analysis

{¶ 8} Brock's first assignment of error states:

THE TRIAL COURT ERRED IN FAILING TO STRIKE JURORS FOR CAUSE IN VIOLATION OF BROCK'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND IMPARTIAL JURY.

{¶ 9} Brock contends the trial court erred in overruling his motion to strike two prospective jurors for cause. During voir dire, both prospective jurors, a male and a female, struggled with the concept of a defendant's choosing not to testify in a criminal case. They stated that they would expect an innocent person to tell his story. The male prospective juror also stated that the testimony of a police officer is more credible than the testimony of other witnesses due to the additional oath that law-enforcement officers take. The female prospective juror stated that if a parent claimed a child had been sexually abused but the child denied abuse, she would be more likely to believe the parent based solely on the parent's status as a parent. After questioning by counsel, the trial court questioned both prospective jurors and ultimately denied Brock's for-cause challenges. Brock then exercised peremptory challenges to remove both prospective jurors.

{¶ 10} On appeal, Brock contends the two prospective jurors were subject to dismissal for cause under R.C. 2313.17(B)(9) and R.C. 2313.17(D). The former provision provides that good cause exists to remove a prospective juror if the person's answers disclose that he or she "cannot be a fair and impartial juror or will not follow the law[.]" The latter provision provides that "any petit juror may be challenged on suspicion of prejudice against or partiality for either party . . . or other cause that may render the juror at the time an unsuitable juror." A challenge under subdivision (D) "shall be sustained if the court has

any doubt as to the juror's being entirely unbiased."

{¶ 11} In *Estate of Price v. Kidney Care Specialist, LLC*, 2024-Ohio-3122 (2d Dist.), appeal allowed, 2024-Ohio-5529, we recognized that R.C. 2313.17(B)(1-8) identifies eight "principal challenges that, if established, require the juror's removal." *Id*. at ¶ 9, citing *Hall v. Banc One Mgt. Corp*., 2007-Ohio-4640, ¶ 1. "This is so because the challenges set forth by R.C. 2313.17 (B)(1-8) are objective determinations which, if established, preclude a trial court's discretion to conclude that despite the existence of a R.C. 2313.17(B)(1-8) disqualifier, the juror may nonetheless be an appropriate juror." *Id*., citing *Hall* at ¶ 36.

{¶ 12} The challenge created by R.C. 2313.17(B)(9), however, is different. It "requires the court to make a subjective determination about a potential juror's fairness and impartiality and therefore requires the exercise of judicial discretion." *Hall* at ¶ 1, citing *Berk v. Matthews*, 53 Ohio St.3d 161 (1990); *see also Estate of Price* at ¶ 10. When addressing a challenge under R.C. 2313.17(B)(9), a trial court may engage in further questioning of a prospective juror and, in the exercise of its discretion, may conclude that the juror is capable of being fair, impartial, and following the law. *Estate of Price* at ¶ 12 ("However, unlike the immutable R.C. 2313.17(B)(1-8) disqualifiers, a juror's initial response to a question regarding the burden of proof or another legal topic is not fixed but instead is subject to change following further questioning and explanation. As such, we conclude that the appellate standard of review when evaluating a R.C. 2313.17(B)(9) challenge—whether for an inability to be fair and impartial or to follow the law—is the abuse of discretion standard.").

{¶ 13} Similarly, R.C. 2313.17(D) " 'requires the court to make a subjective determination about a potential juror's fairness and impartiality and therefore requires the exercise of judicial discretion.' " *Curley v. Wilcox*, 2023-Ohio-3507, ¶ 17 (2d Dist.), quoting *Hall* at ¶ 1. " 'The determination of whether a juror is impartial or biased involves a judgment

of credibility, which may not be apparent from the record on appeal. Therefore, a reviewing court will defer to the trial judge who sees and hears the juror.' " *Id*., quoting *Hunt v. E. Cleveland*, 2019-Ohio-1115, ¶ 37 (8th Dist.).

{¶ 14} Upon review, we see no abuse of discretion in the trial court's refusal to excuse either of the two prospective jurors for cause under R.C. 2313.17(B)(9) or R.C. 2313.17(D). While being questioned by defense counsel, the male prospective juror ultimately affirmed that he could hold a police officer to "the same level" and the "same standard as everyone else" who testified. Regarding the need for a defendant to testify, the male and female prospective jurors both ultimately assured the trial court that they could follow the law regarding Brock's constitutional right not to testify. They agreed not to consider for any purpose his failure to testify at trial.

{¶ 15} Regarding the female prospective juror's statement about believing a parent's testimony over a child's testimony when there is a conflict, defense counsel asked the following question: "If a parent says that their child has been sexually molested, but the child says no, nothing happened, who here thinks it's likely that something still happened?" The female prospective jury responded affirmatively, stating that "the parent would probably know" and that "the child probably don't understand that something did happen." Upon further questioning, the female prospective juror confirmed that she would be more likely to believe the parent "in that hypothetical." The female prospective juror expressed an inability to follow a rule requiring her not to give a parent's testimony more credibility than a child's testimony based on the parent's status as a parent.

{¶ 16} The female prospective juror's position on the foregoing issue would be problematic if the present case involved conflicting testimony from T.H. and her 10-year-old daughter. But the hypothetical scenario envisioned by defense counsel remained purely

hypothetical, as it did not transpire at trial. As noted above, T.H. testified that the videos at issue depicted Brock fondling her 10-year-old daughter's buttocks. Unlike the hypothetical scenario presented by defense counsel, the child did not contradict T.H. by claiming that nothing had happened. The child did not testify, and no statements by the child were introduced through any other witnesses. A detective testified only that the child made "no disclosures," which is not the same as saying nothing happened. The detective's testimony established only that the child did not talk about the incident, quite possibly because she purportedly was asleep when it occurred.

{¶ 17} Given that defense counsel's scenario involving conflicting parent-child testimony remained purely hypothetical, the female prospective juror's view favoring a parent's testimony over a child's was immaterial. "The relevant inquiry during voir dire is whether the juror's beliefs would prevent or substantially impair his or her performance of the duty in accordance with the instructions and oath." *State v. Franklin*, 2002-Ohio-5304, ¶ 34. Here the female prospective juror's belief about a parent's testimony being more credible than a child's conflicting testimony did not impair her ability to serve because the case did not involve that issue. "[P]rejudice not directed personally at the accused or materially affecting the fairness of the trial does not automatically qualify for dismissal." Baldwin's Ohio Practice Criminal Law § 64:3 (3d ed.); *see also Shifflett v. Virginia*, 221 Va. 760, 771 (1981) ("Whether a juror is impartial and stands indifferent to the cause is to be determined in light of the controverted issues."); *Artis v. Santos*, 95 F.4th 518, 529 (7th Cir. 2024) (reasoning that "[i]mmaterial and uncontestable beliefs prejudice no one and are not, strictly speaking, 'biases' "); *Garry v. Borger*, 2023-Ohio-905, ¶ 16 (1st Dist.) ("After interviewing this juror, the trial court was convinced that she would make an effective juror and that any bias she may have would not be relevant in the present civil case.").

{¶ 18} For the foregoing reasons, we do not believe the trial court acted unreasonably, arbitrarily, or unconscionably in refusing to excuse either of the two prospective jurors for cause. Accordingly, Brock's first assignment of error is overruled.

{¶ 19} The second assignment of error states:

THE TRIAL COURT ERRED WHEN IT ADMITTED THE VIDEO EVIDENCE CONTAINED IN STATE'S EXHIBIT 1-A, 1-B, AND 1-C.

{¶ 20} Brock contends the trial court erred in admitting the cell-phone videos into evidence. Although T.H. discovered the videos on his two cell phones, he argues that she provided no "foundation" testimony establishing her personal knowledge that the videos depicted her daughter's buttocks. Brock notes that T.H. did not describe any specific characteristics or defining features of her daughter's buttocks. She simply looked at the videos and expressed certainty that they showed her 10-year-old daughter's bottom. Brock asserts that this testimony "was not sufficient to constitute the minimal foundation of authenticity necessary to establish the identity of a person in a video beyond a reasonable doubt."

{¶ 21} Upon review, we find Brock's argument to be unpersuasive. T.H. testified about finding the videos on Brock's cell phones, and she confirmed that the videos shown at trial were the same ones she had discovered. This testimony adequately authenticated the recordings as accurate depictions of what she had seen on Brock's cell phones. We note too that Brock never denied making the videos. The issue at trial was whether they showed T.H.'s daughter or a silicone doll.

{¶ 22} As for the subject matter of the videos, we see nothing improper about T.H.'s testimony that she knew her daughter and knew that the recordings depicted her daughter's buttocks. T.H.'s failure to reference distinguishing characteristics or unique features of her

daughter's bottom went to the weight of her testimony, not its admissibility or the authenticity of the recordings. The second assignment of error is overruled.

{¶ 23} The third assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ADOPT BROCK'S PROPOSED JURY INSTRUCTIONS IN VIOLATION OF HIS RIGHT TO A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

{¶ 24} Brock contends the trial court erred in failing to provide the jury with six special instructions he proposed. The first stated that the prosecution was required to prove that the videos depicted "an actual, living human being" or a "person" rather than "an inanimate object, such as a silicone doll." The second stated that a silicone doll is not a "person" and that a not-guilty verdict was required if jurors had reasonable doubt as to whether the videos showed a "living human being." The third advised that the prosecution was required to prove that the individual depicted in the videos "was not an inanimate object." The fourth stated that the prosecution was required to prove that the individual depicted was under age 13. The fifth stated that the defense had no obligation to prove that the videos depicted a silicone doll and, instead, that the prosecution bore the burden to prove "that the images show[ed] a living human being under the age of thirteen." The sixth specified that the prosecution was required to prove each of the following: "That the images depict a human being; That the human being depicted was not inanimate; like a doll; and That the human being depicted was under the age of thirteen years." The trial court declined to give any of these instructions, relying instead on standard Ohio jury instructions addressing gross sexual imposition and illegal use of a minor in nudity-oriented material.

{¶ 25} "A defendant is only entitled to have his proposed jury instructions given when

they are correct statements of the law, pertinent to the evidence in the record or to material issues, and are timely presented and not already included in the substance of the jury charge." *State v. Elliott*, 2014-Ohio-4958, ¶ 23, (2d Dist.), citing *State v. Guster*, 66 Ohio St.2d 266, 269 (1981). "When reviewing the trial court's jury instructions, the proper standard of review is whether the trial court's decision to give or exclude a particular jury instruction was an abuse of discretion under the facts and circumstances of the case." (Citation omitted.) *State v. Fair*, 2011-Ohio-4454, ¶ 65 (2d Dist.).

{¶ 26} Here the trial court did not abuse its discretion in refusing to give the requested instructions because they were included in the substance of its jury charge. Regarding gross sexual imposition, the trial court instructed the jury that a guilty verdict required it to find, beyond a reasonable doubt, that Brock had engaged in sexual contact with another person who was less than 13 years old. The trial court defined "sexual contact" as touching an erogenous zone of another person for purposes of sexually arousing or gratifying either person.

{¶ 27} As for illegal use of a minor in nudity-oriented material, the trial court instructed the jury that a guilty verdict required a finding, beyond a reasonable doubt, that Brock had "photographed a minor who was not the Defendant's child or ward in a state of nudity, or created or produced any material or performance that showed a minor who was not the Defendant's child or ward in a state of nudity." The trial court specifically instructed the jury that a "minor" for purposes of this charge meant a person under age 18. The trial court also instructed the jury that "nudity" included showing "human male or female genitals, pubic area, or buttocks" or "a human breast."

{¶ 28} The foregoing instructions made clear the applicable age requirements and the fact that convictions required Brock to have recorded an actual person rather than a

silicone doll. The trial court was not required to specify that a silicone doll is not a human person or that a human person is not an inanimate object. The trial court's jury charge also adequately explained the burden of proof. We see nothing relevant in Brock's proposed instructions that was not incorporated in the trial court's jury charge. Therefore, the trial court did not abuse its discretion in refusing to give the requested special instructions. The third assignment of error is overruled.

{¶ 29} The fourth and fifth assignments of error state:

BROCK'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

BROCK'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 30} Brock's final two assignments of error challenge the legal sufficiency and manifest weight of the evidence to sustain his convictions for gross sexual imposition and illegal use of a minor in nudity-oriented material.

{¶ 31} Regarding legal sufficiency, Brock contends the State presented legally insufficient evidence to prove (1) that the videos depicted a person, i.e., a "living, breathing, human," (2) when the recordings were made, or (3) that the sexual contact was for the purpose of sexually arousing or gratifying either person, as required for a gross-sexual-imposition conviction.

{¶ 32} In support of his manifest-weight argument, Brock suggests that T.H.'s daughter could not have slept through the recording incident, which involved him pulling down the child's jeans, rubbing and spreading her buttocks, and pushing his fingers toward her vagina. He notes that the torso depicted in the videos did not flinch, shift, or make any movement. He also points out that the torso showed no signs of breathing and that the

videos showed no face, hands, or legs. He stresses too that CARE House team members were unable to say whether the videos depicted a person or a silicone doll. Brock contends T.H.'s explanation about her daughter being a heavy sleeper defied credibility. He also notes that she failed to mention any identifying characteristics or defining features of her daughter's buttocks. Finally, Brock points out that T.H. originally misidentified a pink sweatshirt as being depicted in the videos when speaking to police.

{¶ 33} In contrast to T.H.'s testimony, Brock contends he credibly told a detective that the videos depicted the torso of a sex doll he found when cleaning an apartment. According to the detective, Brock admitted sneaking the doll home, dressing it in T.H.'s 10-year-old daughter's clothes, and making videos of himself touching it. Brock also told the detective that he made the videos because he and T.H. had not been sexually active for some time, and he wanted to masturbate while viewing them. Brock claimed he discarded the doll and deleted the videos the same day T.H. discovered the recordings because they had reconciled with each other. Brock also cites his private investigator's testimony about the existence and availability of realistic-looking silicone dolls. Finally, he notes that T.H.'s daughter did not disclose any abuse to CARE House team members and did not testify at trial.

{¶ 34} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 35} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 36} With the foregoing standards in mind, we reject Brock's legal-sufficiency argument. T.H. testified without any doubt that the videos depicted her 10-year-old daughter's bare buttocks. This testimony alone, if believed, was legally sufficient for the jury to find that the recordings depicted a live person, not a silicone doll. *State v. Belsar*, 2025-Ohio-57, ¶ 14 (2d Dist.) (recognizing that the testimony of a single witness, if believed, may be legally sufficient to support a conviction). As for when the videos were made, Brock himself admitted to a detective that he made them sometime in December 2023. The record also contains evidence that the video files found on his cell phones were dated "20231231." Consistent with Brock's admission, the detective reasonably inferred that this meant December 31, 2023. At that time, T.H.'s daughter was 10 years old. Finally, Brock admitted to the detective that he made the videos with the intent of masturbating while watching them. This admission was legally sufficient to establish that he touched T.H.'s daughter's erogenous zone for the purpose of sexually arousing or gratifying himself. Even if we accept Brock's assertion that he had no present intent to sexually arouse or gratify himself at the precise time he made the videos, R.C. 2907.01(B) imposed no such requirement. The

statute simply required him to touch the victim's erogenous zone "for the purpose of sexually arousing or gratifying either person." Brock's admission that he intended later to masturbate to the videos established his intent to sexually arouse or gratify himself. For the foregoing reasons, we reject his legal-sufficiency challenge to his convictions.

{¶ 37} Regarding the manifest weight of the evidence, Brock raises credibility issues that properly were for the jury to resolve. As noted above, he argues that T.H.'s young daughter could not have slept through the incident, that the torso depicted in the videos did not move or show signs of breathing, that CARE House employees could not say whether the recordings depicted a person or a doll, that T.H.'s testimony that her daughter was a heavy sleeper defied credibility, that T.H. failed to mention any distinguishing features on her daughter's buttocks, that T.H. misidentified a pink sweatshirt as being shown in the videos, that he provided a consistent explanation for his possession and recording of a silicone doll, that his private investigator testified about the existence of lifelike silicone dolls, and that T.H.'s daughter did not disclose any abuse to CARE House team members and did not testify at trial.

{¶ 38} Having reviewed the record, we cannot say the jury created a manifest miscarriage of justice in rejecting Brock's arguments and finding him guilty. T.H. testified that the torso depicted in the videos was wearing her 10-year-old daughter's clothing in a bed where the child slept. T.H. recognized her daughter's blankets, jeans, and shirt. T.H. additionally noticed that the torso depicted in the videos was wearing jeans without underwear. She testified that her 10-year-old daughter tended not to wear underwear. T.H. also explained that the child was a heavy sleeper. She repeatedly opined that her daughter likely would have remained asleep during the recording of the videos. We note too that Brock never produced the silicone doll that he claimed to have recorded. When being interviewed

by the detective, he asserted that he had thrown it away earlier on the same day that T.H. discovered the videos. At trial, the detective also noted that the shirt on the torso in the videos "went out to the right" where an arm would be if a person were wearing it. The detective further opined that a hood on the shirt appeared to be "popped up" as if there were a head present.

{¶ 39} As for Brock's argument about CARE House representatives not knowing whether the videos depicted a person or a doll, the detective testified that they acknowledged lacking any special ability to make such an evaluation. We note too that T.H.'s failure to mention any distinguishing features may have impacted the weight of her testimony but did not preclude the jury from relying on it and finding it credible. T.H. testified without hesitation or uncertainty that "I just know my baby—my baby's bottom." The jury was entitled to credit this testimony. Initially, T.H. did mistakenly refer to a pink sweatshirt as being seen in the videos. She later realized her mistake and gave police a white article of clothing that was depicted in the videos. As for Brock's argument about the child not disclosing any abuse to CARE House team members, the record reflects only that she made "no disclosures." In its closing argument, the State correctly noted that making "no disclosures" was not the same as saying nothing happened. It established only that the child did not talk about the incident.

{¶ 40} Ultimately, the jury had to decide whether the bare buttocks depicted in the videos wearing T.H.'s daughter's clothing in a bed where the child slept was the child's body or whether it was silicone torso that Brock had found, snuck into the house, recorded, and then discarded in an unspecified location on the same day that T.H. discovered the videos. In resolving this issue in favor of the State and finding Brock guilty, the jury did not clearly lose its way. This was not an exceptional case in which the evidence weighed heavily against

his convictions. The fourth and fifth assignments of error are overruled.

## III. Conclusion

**{¶ 41}** The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HANSEMAN, J., concur.