[Cite as *Laudato v. Teramana*, 2026-Ohio-1585.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

NICHOLAS LAUDATO

    Appellant

v.

MARNI ANN TERAMANA D.O. ET AL.

    Appellees

:
:   C.A. No. 30611
:
:   Trial Court Case No. 2023 CV 05613
:
:   (Civil Appeal from Common Pleas
:   Court)
:
:   **FINAL JUDGMENT ENTRY &**
:   **OPINION**

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 1, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
CHRISTOPHER B. EPLEY, JUDGE

TUCKER, J., and HUFFMAN, J., concur.

## OPINION
MONTGOMERY C.A. No. 30611

LOUIS C. SCHNEIDER, Attorney for Appellant
JOHN B. WELCH and GERALD J. TODARO, Attorneys for Appellees

EPLEY, J.

{¶ 1} Nicholas Laudato, as administrator and personal representative of the estate of Denise Holland, appeals from the trial court's denial of his motion for a new trial. He claims that the trial court denied him a fair trial when it failed to dismiss three prospective jurors for cause during jury selection. For the following reasons, the trial court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} On October 19, 2019, 55-year-old Denise Holland went to the emergency department at Kettering Medical Center for shortness of breath. Holland had been a long-time smoker, and she suffered from chronic obstructive pulmonary disease. She was also recovering from recent surgery for breast cancer.

{¶ 3} Holland arrived at approximately 10:30 p.m., and while in the waiting room, she received the first of a series of three breathing treatments in accordance with the advanced triage guidelines for a patient with respiratory distress. After being taken to a room, she received care from Dr. Marni Ann Teramana, an emergency medicine physician, and others. Over the next three hours or so, Holland received the two additional breathing treatments, got a chest x-ray and an EKG, and was assessed multiple times. At approximately 1:30 a.m. on October 20, 2019, a nurse administered steroids and then walked Holland around the emergency department. At 1:55 a.m., Holland was discharged and sent home. She walked out of the hospital without difficulty.

2

**{¶ 4}** Between 2:30 a.m. and 3:00 a.m., Holland collapsed in her home. Her daughter, Lauren, called 911, and Holland was taken by ambulance to Sycamore Hospital. Holland underwent severe respiratory failure and cardiac arrest, and her brain was deprived of oxygen. Holland lost consciousness and suffered an anoxic brain injury. She did not recover. Eventually, Lauren made the decision to discontinue life support. Holland received hospice care for a week and died on November 11, 2019.

**{¶ 5}** On April 5, 2021, Lauren, as administrator of Holland's estate, filed suit against Dr. Teramana, Emergency Medical Specialists, Inc. ("EMS"), Physician Management Group, Inc. ("PMG"), and others, alleging negligence, wrongful death, and vicarious liability/respondeat superior liability. She sought compensatory damages, punitive damages, attorney's fees, and expenses. *Holland v. Teramana*, Montgomery C.P. No. 2021 CV 01369. On October 15, 2023, the claims against Dr. Teramana, EMS, and PMG were dismissed without prejudice. Three days later, Laudato, the successor administrator of Holland's estate, refiled the action against Dr. Teramana, EMS, and PMG.

**{¶ 6}** The matter proceeded to a jury trial on May 28, 2024. During voir dire, plaintiff's counsel asked if any of the prospective jurors had a strong feeling about lawsuits against hospitals or doctors. Tr. 55. A few unidentified prospective jurors responded, including one who stated that society had become "overly litigious." Tr. 56. In that juror's opinion, "a lot of things cost a lot more nowadays because of the litigious nature of where we are today, unfortunately." Tr. 58. The parties' discussion during challenges for cause suggests that Juror #6 made these comments.

**{¶ 7}** Plaintiff's counsel later asked if anyone would be uncomfortable deciding how much money should be awarded if there were damages in the case. Juror #16 initially responded that she "[didn't] even know what to say about that." Tr. 69. She agreed that she

3

would be uncomfortable and that it "would be a hard decision for me." *Id*. When asked why, she replied, "I know you mentioned that it's – someone died as a result, and I can't put a number on that." *Id*.

{¶ 8} After several other prospective jurors expressed difficulty quantifying damages in the wrongful death context, plaintiff's counsel asked, "[I]s there anyone who, after talking about this topic, now feels, well, maybe I'm not an appropriate juror for this case because it's going to be a lot harder?" Tr. 77. Among those who raised their hands, Juror #6 replied, "I don't think so. I think I – I don't think that I'm necessarily a great candidate for it, but it's just in my perspective, in my line of work [school administrator], and what I've . . . worked through, I think that it would be very difficult for me . . . to not have an unintentional bias." Tr. 77-78. Plaintiff's counsel responded, "So given your background, your experience, your work, and things like that, you feel like you would have a hard time following the law in this case, and being a totally fair and impartial juror?" Juror #6 replied, "I do." Tr. 78.

{¶ 9} Juror #13 also responded to the question, indicating that her brother, who was disabled, had been in an automobile crash a few years before and had gone to Miami Valley Hospital. While there, the brother was dropped, and the family decided not to sue because the fall was an accident. Tr. 78-79. Juror #13 expressed that she did not know if she could put a "money amount" or "value amount" on life. When asked if she would have a hard time following the law because she thought it was not possible to put a value on it, Juror #13 said, "I don't think so. There is no value on life, to me. I don't think so. No money value." Tr. 79.

{¶ 10} In chambers, plaintiff's counsel challenged Juror #6, Juror #13, and Juror #16, among others, for cause. Tr. 142-148. The trial court denied those challenges. Tr. 148, 151. Plaintiff's counsel later used peremptory challenges to remove Juror #6 and Juror #16 from

the jury, and he used his two additional peremptory challenges for others. Juror #13 was not removed by either party and consequently was seated as a juror.

{¶ 11} On May 31, 2024, the jury found that Dr. Teramana had not been negligent in the care and treatment of Holland, and it entered a general verdict in favor of Dr. Teramana, EMS, and PMG. Both parties waived polling of the jury. The trial court issued a final judgment on June 11, 2024.

{¶ 12} On July 9, 2024, Laudato moved for a new trial, under Civ.R. 59(A)(1) and (2), raising two issues regarding the jury. First, he argued that the trial court should have dismissed Juror #6, Juror #13, and Juror #16 for cause. He stated that Juror #13 and Juror #16 had expressed that they would not be comfortable awarding damages in a civil case and that Juror #6 was biased based on her opinion that people were overly litigious. Laudato contended that once a bias had been disclosed, a prospective juror could not be rehabilitated. Second, he argued that the jury did not deliberate as instructed by the trial court. He provided an affidavit from one of his attorneys, indicating that the attorney had spoken with a juror, K.Ke., in the jury room after the verdict was rendered. According to the affidavit, K.Ke. had said that the jury did not deliberate but simply voted upon entering the jury room.

{¶ 13} Dr. Teramana, EMS, and PMG opposed the motion for a new trial. They argued that none of the three jurors had said that they would not award damages if the evidence supported it or that they could not follow the court's instructions. They contended that "[s]tatements that it would be 'difficult' or 'hard' do not disqualify a juror." They further argued that Juror #6's statement about people being overly litigious was not disqualifying. They maintained that the trial court had the discretion to determine whether to excuse a juror for cause, even when the juror has made a statement regarding partiality. Finally, they

5

claimed that the post-verdict statement was inadmissible and that Laudato could not challenge the deliberative process.

{¶ 14} In his reply brief, Laudato asserted that jurors had engaged in additional misconduct by discussing witnesses and evidence during breaks throughout the trial. He provided an affidavit from K.Ke. to support that statement, as well as her prior statement about the jury's failure to deliberate before signing the verdict forms.

{¶ 15} On the motion of Dr. Teramana, EMS, and PMG, the trial court struck K.Ke.'s affidavit under Evid.R. 606(B). Laudato later moved for relief from that decision under Civ.R. 60(B), but the trial court denied the motion.

{¶ 16} On August 14, 2025, the trial court denied Laudato's motion for a new trial. The court summarily rejected Laudato's motion to grant a new trial due to alleged juror misconduct. As for the court's failure to strike the prospective jurors for cause, the trial court first noted that Laudato had failed to support the motion with a transcript and citations to the relevant statements. The court concluded that, on that basis alone, the motion could be denied.

{¶ 17} Nevertheless, the trial court indicated that it had reviewed the video-recording of voir dire, and although it was "left to speculate or guess which juror responses Plaintiff is referring to and challenging in his motion," the court concluded that none of the challenges for cause was improperly denied. The court stated that the record contained no instance where a prospective juror affirmatively indicated an inability or unwillingness to follow the court's instructions or to be fair and impartial and was not stricken; none of the jurors identified by Laudato had expressed any disqualifying bias. The court further rejected Laudato's contention that the three challenged jurors should have been automatically

6

disqualified without the possibility of rehabilitation, and it found that the two Sixth District cases that Laudato had relied upon were distinguishable.

{¶ 18} Laudato appeals from the trial court's judgment. In his sole assignment of error, he claims that the trial court erred in denying his motion for a new trial.

### II. Motion for a New Trial Under Civ.R. 59

{¶ 19} Civ.R. 59 enumerates several bases upon which a new trial may be granted, including (1) "[i]rregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial," and (2) "[m]isconduct of the jury or prevailing party." Civ.R. 59(A)(1) and (2). Laudato's argument regarding the trial court's failure to exclude certain jurors for cause falls under Civ.R. 59(A)(1), whereas his argument regarding the jurors' conduct fits squarely within Civ.R. 59(A)(2).

{¶ 20} We review the trial court's determinations on a motion for a new trial under Civ.R. 59(A)(1) and (A)(2) for an abuse of discretion. *Nwafo v. Ugwualor*, 2024-Ohio-189, ¶ 11 (12th Dist.). On appeal, Laudato has only challenged the trial court's denial of his motion for new trial based on the court's failure to exclude Juror #6, Juror #13, and Juror #16 for cause. Accordingly, our review is limited to that issue.

{¶ 21} The Ohio Constitution provides the right of trial by jury. Ohio Const., art. I, § 5. It is well established that this right "carries with it by necessary implication the right to a trial by a jury composed of unbiased and unprejudiced jurors." *Lingafelter v. Moore*, 95 Ohio St. 384, 387 (1917). "Voir dire serves the purposes of allowing the court and the parties to identify and remove jurors to ensure an impartial jury." *State v. Froman*, 2020-Ohio-4523, ¶ 49.

7

{¶ 22} The Ohio legislature has provided nine grounds on which a party may challenge a prospective juror for cause. *See* R.C. 2313.17; *Curley v. Wilcox*, 2023-Ohio-3507, ¶ 14. The principal challenges identified in R.C. 2313.17(B)(1)-(8) "consist of objectively verifiable facts and conclusions, which, if found valid by the court, require the court to excuse the prospective juror." *Hall v. Banc One Mgt. Corp.*, 2007-Ohio-4640, ¶ 1. The trial court "may not rehabilitate or exercise discretion to seat the prospective juror upon the prospective juror's pledge of fairness." *Id*. at syllabus.

{¶ 23} In contrast, under R.C. 2313.17(B)(9), a prospective juror may be dismissed for cause if "the person discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court." This ground requires the trial court "to make a subjective determination about a potential juror's fairness and impartiality and therefore requires the exercise of judicial discretion." *Hall* at ¶ 1, citing *Berk v. Matthews*, 53 Ohio St.3d 161 (1990); *see also, e.g.*, *State v. Humphreys*, 2026-Ohio-373, ¶ 46 (2d Dist.); *Estate of Price v. Kidney Care Specialist, LLC*, 2024-Ohio-3122, ¶ 10 (2d Dist.), citing *Hall* at ¶ 38. "When addressing a challenge under R.C. 2313.17(B)(9), a trial court may engage in further questioning of a prospective juror and, in the exercise of its discretion, may conclude that the juror is capable of being fair, impartial, and following the law." *State v. Brock*, 2025-Ohio-2538, ¶ 12 (2d Dist.).

{¶ 24} R.C. 2313.17(D) is a catchall provision that allows a prospective juror to be challenged "on suspicion of prejudice against or partiality for either party, . . . or other cause that may render the juror at the time an unsuitable juror." As with R.C. 2313.17(B)(9), the catchall provision requires the trial court to make a subjective determination regarding the prospective juror's partiality or suitability and thus requires an exercise of discretion. *Brock* at ¶ 13.

8

{¶ 25} Upon review, we find no abuse of discretion in the trial court's denial of Laudato's motion for a new trial based on the court's refusal to excuse Juror #6, Juror #13, and Juror #16 for cause under R.C. 2313.17(B)(9) or (D).

{¶ 26} Laudato's primary argument is that the prospective jurors could not be rehabilitated once they expressed bias or an inability to follow the trial court's instructions, because a challenge under R.C. 2313.17(B)(9) is a principal challenge. We agree with the trial court that our case law does not support Laudato's assertion. We rejected a similar argument by counsel for an estate in *Estate of Price*, concluding that the argument was inconsistent with *Hall*. *Estate of Price*, 2024-Ohio-3122, at ¶ 12 (2d Dist.). Following *Estate of Price*, we expressly stated in *Brock* that a trial court is permitted to engage in additional questioning of a prospective juror and to determine, in the exercise of its discretion, whether that prospective juror is capable of being fair, impartial, and following the law. *Brock*, 2025-Ohio-2538, at ¶ 12 (2d Dist.).

{¶ 27} We have further explained that such an argument "is not compatible with the reality that prospective jurors come to the process without legal training or experience which, given the relatively informal give-and-take voir dire process, can result in a juror making a statement that, in isolation, would allow a conclusion that the prospective juror will not follow the law as instructed by the trial court." *Estate of Price* at ¶ 12. We noted that "a juror's initial response to a question regarding the burden of proof or another legal topic is not fixed but instead is subject to change following further questioning and explanation." *Id*.

{¶ 28} The Ohio Supreme Court has accepted *Estate of Price* for review, specifically on the issue of whether a prospective juror may be rehabilitated after the prospective juror has disclosed that he or she cannot be a fair and impartial juror or will not follow the law as

9

given by the court. *See 11/26/2024 Case Announcements*, 2024-Ohio-5529. We decline to reconsider our reasoning in that case here.

{¶ 29} Laudato further claims, in a single sentence, that the three prospective jurors were not, in fact, rehabilitated. This argument fails for two reasons. First, Laudato has waived his ability to raise this argument. In response to the motion for a new trial, defense counsel argued that the trial court's denial of the challenges for cause was reasonable, because the three prospective jurors did not express any disqualifying bias, and that "to the extent they indicated *any* initial bias, they were rehabilitated." (Emphasis in original.) In reply to the defense, Laudato's counsel emphasized that the three prospective jurors had made comments reflecting that they could not be fair and impartial. Counsel did not assert, alternatively, that the attempts to rehabilitate were inadequate. In its decision denying the motion for a new trial, the trial court noted that "Plaintiff does not dispute Defendants' assertion that the challenged jurors were rehabilitated." Laudato cannot raise a lack of rehabilitation for the first time on appeal. *Edwards v. Galluzzo*, 2024-Ohio-2005, ¶ 22 (2d Dist.) ("Parties may not raise any new issues or legal theories for the first time on appeal that were not raised in the lower court.").

{¶ 30} Second, we cannot conclude that the trial court abused its discretion when it determined that the challenges for cause as to Jurors #6, #13, and #16 were appropriately denied.

{¶ 31} Although Jurors #13 and #16 expressed discomfort with placing a value on life, no prospective juror responded that an estate should not be able to get damages for a decedent's pain and suffering. Tr. 82. When asked if there should be an upper limit on how much a jury should be able to give, none of the three prospective jurors at issue responded affirmatively. Tr. 83. No one felt that Holland's daughter should not get money under any

circumstances. Tr. 85. No one told plaintiff's counsel that they would have difficulty speaking up if another juror did not want to follow the law during deliberations. Tr. 84.

{¶ 32} Moreover, at the beginning of defense counsel's voir dire questioning, counsel asked whether the prospective juror's could follow the court's instructions. Tr. 91. No one said that they could not. Counsel later asked if everyone understood that there would be no damage award unless the plaintiff proved negligence by Dr. Teramana. Tr. 96. Again, no one responded. Defense counsel asked Juror #6 specifically if she could put her negative experiences aside and "actually look at the evidence in this case and decide whether Dr. Teramana was negligent? Whether she caused this patient's death?" Tr. 99. Juror #6 responded that she could "look at the evidence in order to make a general decision, along with a group of people. I think all of us would be remiss if we didn't – had no biases." Tr. 99-100.

{¶ 33} At the conclusion of counsel's questioning, the trial court asked a series of questions of the prospective jurors, including:

- Does anyone here have any religious, moral, or ethical issues with awarding money damages that are intended to punish Dr. Teramana in this case, should the evidence support those damages?

- Does anyone here believe that there is a maximum amount of money damages that should be awarded to punish a party in a case like this?

- Does anyone here think that they could not award money damages intended to punish the Defendants in this case because one of the Defendants is a doctor?

- Does anyone here think that they could not award money damages intended to punish the Defendants in this case for any reason?

11

- [I]s there anything in your personal experience or background that we haven't directly asked you about that causes you to question or have concerns about your ability to be a fair and impartial juror in this case? Anything at all?

- Okay. Lastly, we've had a lot of discussion this morning about feeling uncomfortable about this process, feeling uncertain about how some of the issues are decided, referencing our past experiences. And all of these feelings are very, I would say very normal and natural, to be expected when you are walking into a courtroom in the morning and you literally have no idea what it is that you're going to be called upon to decide. Okay? Again, as I indicated in the beginning, you as the jury are the Judge of the facts. I am the Judge of the law. And if selected to sit on the jury in this case, you will take an oath to be fair and impartial and to not be influenced by bias, prejudice, or sympathy. And again, I will provide you with the instructions of law that you are to follow as you conduct your deliberations. . . . Is there anyone here saying today that they cannot obey the law other than what we have already discussed? Is there anyone else here today saying that they cannot obey the law?

*See* Tr. 129-133. None of the three prospective jurors at issue responded negatively to these questions. The trial court was entitled to consider the prospective jurors' answers to the group questions in determining whether they could be fair and impartial or could follow the court's instructions. *See State v. Rogers*, 2025-Ohio-4794, ¶ 52-61.

{¶ 34} Although a prospective juror's silence in response to a judge's group question likely might not be sufficient to overcome an unequivocal declaration that the prospective

12

juror could not afford the parties a fair trial, *see id*. at ¶ 58, the trial court reasonably concluded that none of the three prospective jurors had affirmatively expressed an inability or unwillingness to follow the court's instructions or to be fair and impartial. The trial court viewed the answers of Juror #13 and Juror #16 regarding damages as expressing a predisposition against awarding damages but not an affirmative indication of their unwillingness to follow the court's instructions or to be fair and impartial. As noted in Teramana's appellate brief, it is possible that their discomfort with placing a value on a life might have led them to award a larger, not smaller, damage award. Regardless, the trial court found that their subsequent answers later affirmed their ability to render a fair and impartial verdict. As for Juror #6, the court noted that the prospective juror's initial statement about society's being overly litigious was a general opinion about society, not about the case itself, and that she also later affirmed that she could follow the law and be fair and impartial. The court reasonably concluded that none of the three prospective jurors expressed a disqualifying bias.

{¶ 35} The assignment of error is overruled.

### III. Conclusion

{¶ 36} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HUFFMAN, J., concur.

13